# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 853 - all | **DATE** | 7/12/2001 |
| **CASE TITLE** | UNITED STATES vs. WILLIAM HANHARDT | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Basinski's motion to suppress is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

JUL 13 2001
date docketed

docketing deputy initials

ED-7
FILED FOR DOCKETING

0  JUL 12 PM 5: 09

EF  courtroom deputy's initials

date mailed notice

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

161

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 00 CR 0853 |
| | ) | |
| vs. | ) | HONORABLE CHARLES R. NORGLE |
| | ) | |
| WILLIAM A. HANHARDT; JOSEPH | ) | |
| N. BASINSKI; PAUL J. SCHIRO, | ) | |
| SAM DESTEFANO, GUY ALTOBELLO | ) | |
| and WILLIAM R. BROWN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DOCKETED
JUL 1 3 2001

**OPINION AND ORDER**

CHARLES R. NORGLE, Sr., District Judge:

Before the court is the motion of Defendant Joseph Basinski to suppress evidence obtained from a search of his briefcase. This evidence was previously suppressed in a case involving alleged witness retaliation and obstruction of justice because the Government searched the briefcase without a warrant. See United States v. Basinski, 226 F.3d 829, 833-39 (7th Cir. 2000). Since then, the Government has obtained a search warrant, re-searched the briefcase, and indicated its intent to offer the same evidence against Basinski in the case at bar. For the following reasons, Basinski's motion to suppress is denied.[1]

---

[1]Defendant William Hanhardt filed a motion to join in Basinski's motion to suppress [131-1]. The court denied Hanhardt's motion, and issued a separate order to that effect. (See Order of June 29, 2001, R. 148.)

161

# I.  BACKGROUND[2]

The prosecution at bar arises out of an alleged conspiracy to commit jewelry thefts.  During the Government's lengthy investigation of this alleged conspiracy, it learned that in 1997 Basinski had given a briefcase to his friend, William Friedman, with instructions to burn the briefcase and its contents.  Friedman ignored Basinski's orders, and in February 1999, told the FBI about the briefcase.  On February 23, 1999, Government agents went with Friedman to where he had hidden the briefcase.  Without obtaining a search warrant, Government agents seized the briefcase, pried it open, and found the evidence at issue.  At all times thereafter, the Government has retained possession of Basinski's briefcase and its contents because he has never sought their return.

When Basinski learned of Friedman's betrayal, Basinski allegedly went to Friedman's home and attacked him.  As a result, Basinski was charged with retaliating against a witness and obstruction of justice in violation of 18 U.S.C. §§ 1513(b), 1503(a).  These charges were brought in case number 99 CR 196, which was assigned to Judge Coar.  In that case, Basinski moved to suppress any evidence obtained from the warrantless search of his briefcase.  Judge Coar granted Basinski's motion, which was affirmed by the Seventh Circuit on September 5, 2000.  Basinski, 226 F.3d at 833-39.

On October 19, 2000, Basinski and five Co-Defendants were indicted in this case, number 00 CR 853, which alleges a conspiracy to commit jewelry thefts across the United States.  Three months later, on January 18, 2001, the Government dismissed the retaliation and obstruction charges against Basinski in case number 99 CR 196.

---

[2] For further background details, see the Seventh Circuit's opinion affirming Judge Coar's order of suppression, Basinski, 226 F.3d at 832-33.

Six days after dismissing case number 99 CR 196, on January 24, 2001, the Government submitted to Chief Judge Aspen an application for a search warrant to re-search Basinski's briefcase in case number 00 CR 853. The application was supported by a memorandum of law, an affidavit from an FBI agent, and exhibits that included earlier search warrants and affidavits from the investigation that led to case number 00 CR 853. All of the facts stated in the FBI agent's affidavit, as well as those found in the supporting exhibits, were in existence prior to February 23, 1999, the date of the illegal search of Basinski's briefcase.

The Government's supporting legal memorandum informed Chief Judge Aspen of the February 23, 1999 warrantless search of the briefcase, and the Seventh Circuit's opinion affirming the suppression of the evidence obtained therefrom. The memorandum asserted that a warrant was appropriate under the independent source doctrine found in <u>Silverthorne Lumber Co. v. United States</u>, 251 U.S. 385 (1920) and its progeny. The Government pointed out that it was relying exclusively on facts and evidence available prior to February 23, 1999, and therefore, the independent source doctrine allowed issuance of a warrant. On January 24, 2001, Chief Judge Aspen issued the warrant. The Government served the warrant on Friedman, and re-searched the briefcase.

The Government indicated its intent to offer the contents of the briefcase against Basinski and the other Co-Defendants at trial in this case. Basinski objected to this, and stated that his position was that the Government had the burden to seek relief from the Seventh Circuit's order, instead of Basinski having the burden to file another motion to suppress. (<u>See</u> Tr. of May 7, 2001, pp. 4-7.) The court rejected Basinski's view, and ruled that it was Basinski's burden to move to suppress the briefcase. The court stated:

> If the government announces, as it has, that it does intend to offer the so-called Basinski briefcase and its contents, and apparently Judge Aspen as part of other hearings has made a determination of probable cause, at least there is a good-faith basis for the government to offer it here, notwithstanding what the Seventh Circuit may have said in Basinski.
>
> And if you tell me there is a Supreme Court case on point which permits the government to do that, I accept your representation.
>
> And procedurally, then, it would be the burden of any aggrieved party who would have standing to move to suppress the briefcase, the Basinski briefcase, and its contents in this case.

(Tr. of May 7, 2001, pg. 8.) Notwithstanding the court's ruling, Basinski remained firm in his position that it was the Government's burden to seek relief from the Seventh Circuit's order. On June 4, 2001, Basinski filed a legal memoranda styled as "Position of Joseph Basinski Regarding Compliance with the Seventh Circuit's Order of Suppression of Evidence," which put forth argument against the Government's introduction of the evidence. On June 8, 2001, the court conducted another hearing, where Basinski reiterated his position that it was the Government's burden to seek relief from the Seventh Circuit's order. (See Tr. of June 8, 2001, pp. 14-16.) After some discussion with the court, Basinski stated that he would re-file his position paper as a motion to suppress. (See id.) Basinski did so the same day, making only minor changes to the memoranda. After briefing, the motion to suppress is ripe for ruling.

## II. DISCUSSION

This case focuses on the independent source doctrine, and the applicability of collateral estoppel to the Seventh Circuit's order affirming suppression in 99 CR 196. Basinski submits two arguments in support of his motion to suppress: (1) the independent source doctrine does not apply to the facts of this case; and (2) the decision of the Seventh Circuit in United States v. Basinski bars

4

this suppression litigation under the doctrine of collateral estoppel. The Government takes the opposite view on both of these issues.

Before reaching the merits of these issues, a couple of preliminary matters need to be resolved. The Government spends a portion of its brief arguing that the affidavit and supporting exhibits submitted to Chief Judge Aspen demonstrate probable cause to issue the search warrant. Basinski, however, does not contest the existence of probable cause to seize and search the briefcase. (See Reply, pg. 1.) Thus, the existence of probable cause is not in dispute. And, even if it were, this court also finds that the materials submitted to Chief Judge Aspen provide an ample basis on which to find probable cause. The supporting materials outline a portion of the Government's lengthy investigation of the alleged jewelry theft conspiracy and include information from both named and confidential informants, all of which demonstrate probable cause to believe that Basinski's briefcase contained evidence of criminal activity.

Next, the Government argues that Basinski did not have an objectively reasonable expectation of privacy in the briefcase. This argument is unnecessary because the Government has obtained a search warrant, based on probable cause, to search the briefcase. Thus, there is no need for the court to decide whether Basinski had a subjective expectation of privacy that was objectively reasonable. Cf. Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). These issues aside, the court examines Basinski's motion.

**A. The Independent Source Doctrine:**

The Fourth Amendment to the Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The starting point for Fourth Amendment analysis is that a search or seizure is "generally considered unreasonable unless the government obtains a warrant issued upon probable cause." Basinski, 226 F.3d at 833 (citing cases). Here, Basinski contends that the Seventh Circuit's order finding illegal the February 23, 1999 warrantless search of his briefcase ends the issue. Basinski argues that the same evidence found in the subsequent re-search of the briefcase pursuant to the January 24, 2001 warrant issued by Chief Judge Aspen cannot be admitted against him at trial in this case. The Government counters that the second search was performed with a warrant supported by probable cause, and that the probable cause determination was made independent of any information found in the briefcase during the February 23, 1999 warrantless search. As discussed below, the court agrees with the Government.

The independent source doctrine traces its beginning to Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920). In Silverthorne, Justice Holmes wrote that the Fourth Amendment forbids the Government from using information obtained during an illegal search, but does not forever bar that information from admission at trial. Silverthorne, 251 U.S. at 392. Justice Holmes stated:

> The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others. . . .

Id.

The Supreme Court's most recent analysis of the independent source doctrine came in the case of Murray v. United States, 487 U.S. 533 (1988). Murray arose when police officers, who had reason to believe that a warehouse held contraband, forced entry into the warehouse, where they saw burlap covered bales. Id. at 535-36. The officers did not disturb the bales, and left the warehouse, keeping it under surveillance while they obtained a search warrant. Id. In obtaining the warrant, the officers did not inform the issuing magistrate of their warrantless forced entry, nor did they tell the magistrate about what they saw in the warehouse. Id. The search warrant was issued approximately eight hours after the unlawful entry. Id. At that time, the officers re-entered the warehouse, searched the bales, discovered they were marijuana, and seized them along with other incriminating evidence. Id.

At issue in Murray was whether the second search and seizure pursuant to the warrant was truly independent of the first illegal entry into the warehouse. Id. at 542. "The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here." Id. The Court said that the second search pursuant to the warrant would not be independent if the officers' "decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." Id. The factual record was not sufficiently developed to determine these questions, so the Court remanded the case to the District Court. Id. at 543. Since the Murray decision, the Seventh Circuit has had several opportunities to analyze and discuss the independent source doctrine. See e.g. United States v. May, 214 F.3d 900 (7th Cir. 2000); United States v. Hall, 142 F.3d 988 (7th Cir. 1998); United States v. Gravens, 129 F.3d 974 (7th Cir. 1997); United States v. Liss, 103 F.3d 617 (7th Cir. 1997); United

States v. Clemens, 58 F.3d 318 (7th Cir. 1995); United States v. Markling, 7 F.3d 1309 (7th Cir. 1993); United States v. Johnston, 876 F.2d 589 (7th Cir. 1989).

In Markling, the Seventh Circuit provided a thorough analysis and history of the independent source doctrine. Markling, 7 F.3d at 1315–18. Of primary concern in its analysis were the competing interests at stake in deciding whether to exclude evidence on Fourth Amendment grounds. Id. at 1315. The purpose of the exclusionary rule is to deter police misconduct by prohibiting the introduction of evidence obtained in violation of the Fourth Amendment. Id. (citing Murray, 487 U.S. at 536 and United States v. Salgado, 807 F.2d 603, 607 (7th Cir. 1986)). The exclusionary rule, however, exacts a significant societal cost by depriving juries of probative evidence of crimes, and is in tension with the public's interest in detecting and punishing criminal behavior. Markling, 7 F.3d at 1315. The independent source doctrine is a means of balancing these competing interests. See id.

> [T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred. . . . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been absent any error or violation.

Murray, 487 U.S. at 537 (quoting Nix v. Williams, 467 U.S. 431, 443 (1984)).

To balance these interests and determine whether challenged evidence truly has an independent source, the court must conduct two inquiries. See Markling, 7 F.3d at 1315-16 (discussing Murray). First, was the magistrate's decision to issue the warrant affected by, or in reliance on, information obtained from an illegal search? Markling, 7 F.3d at 1315-16; United States v. Herrold, 962 F.2d 1131, 1141-44 (3rd Cir. 1992). Second, was the officer's decision to seek a

warrant prompted by what he had seen during the illegal search? Markling, 7 F.3d at 1315-16. The second question is often re-worded as "would the officer have sought the warrant regardless of the illegal search?" See Murray, 487 U.S. at 543; Markling, 7 F.3d at 1315-16. If the answers to these questions are such that the magistrate did not rely on information found in an illegal search, and the officer's illegal search did not prompt the decision to obtain a warrant, then the challenged evidence has an independent source, and is admissible at trial. See Murray, 487 U.S. at 542. The reason is that excluding evidence that has a source independent of any police error or illegality would put the police in a worse position than they would have been without the error or illegality. See id. at 537; see also United States v. Terzado-Madruga, 897 F.2d 1099, 1115 (11th Cir. 1990) (noting that in an independent source case, "there is no reason to exclude the challenged evidence since the police misconduct is not even a 'but for' cause of its discovery.").

In this case, the inquiry into the facts that Chief Judge Aspen relied on in making his probable cause determination is a simple one. The parties do not dispute that the Government submitted to Chief Judge Aspen only facts in existence prior to the February 23, 1999 illegal search of Basinski's briefcase. The Government did not attempt to use facts found during the illegal search in order to bootstrap a finding of probable cause to search the briefcase. Thus, this prong of Murray supports application of the independent source doctrine.

The answer to the second, or motivational, prong of Murray requires further analysis. The primary evil that the motivational inquiry seeks to root out is the so-called "confirmatory search." See Murray, 487 U.S. at 540 n. 2 (noting that the officers in the Murray case may have misjudged the circumstances, but "there [was] nothing to suggest that they went in merely to see if there was anything worth getting a warrant for."); see also LaFave, Search and Seizure A Treatise on the

Fourth Amendment, § 11.4(f) at 299-303 (3rd ed. 1996) (discussing the motivational prong of Murray). A confirmatory search occurs when officers conduct a search to get assurance that evidence is present before taking the time and effort to obtain a warrant. LaFave, supra, § 11.4(f) at 299; see also United States v. Pena, 924 F. Supp. 1239, 1256 (D. Mass. 1996) (citing LaFave and describing a confirmatory search as one where "officers conduct an initial warrantless search to determine whether they would uncover evidence worth the trouble of obtaining a warrant.").

As noted above, the motivational prong of Murray is often truncated from "was the officer's decision to obtain a warrant prompted by what he had seen during the illegal search?" to "would the officer have sought the warrant regardless of the illegal search?" See Murray, 487 U.S. at 543; Markling, 7 F.3d at 1315-16. Basinski relies heavily on the alternative wording of the motivational inquiry by arguing that the Government's failure to seek a warrant at or near the time of the initial search forever bars it from obtaining a warrant based on independent probable cause. In other words, Basinski argues that the independent source doctrine does not apply unless the Government always had the intention of seeking a warrant, regardless of an illegal search.

Basinski's argument is not entirely spurious, because at first blush the different wordings of the motivational inquiry lead to different conclusions. Basinski asserts, and the Government candidly concedes, that the Government had no intention of seeking a warrant until it became clear from the Seventh Circuit's ruling that the evidence obtained from the briefcase was going to be suppressed in case number 99 CR 196. As discussed in greater detail below, looking at the "original" wording of the motivational inquiry (whether the officer's decision to seek a warrant was prompted by information learned during an illegal search), there is no evidence that the Government's decision to obtain a warrant was prompted by anything discovered during the

February 23, 1999 search. On the other hand, looking at the "re-worded" inquiry (whether the officers would have sought a warrant regardless of the illegal search), the Government had no intention of seeking a warrant until the Seventh Circuit affirmed the suppression in case number 99 CR 196. Thus, the answer to the "original" motivational inquiry favors the Government, while the answer to the "re-worded" motivational inquiry favors Basinski. In resolving this issue, the court must bear in mind the balancing of societal interests that underlies the independent source doctrine, and should avoid placing the Government in a worse position than it would have been absent the February 23, 1999 search. Murray, 487 U.S. at 537; Markling, 7 F.3d at 1315-16.

Basinski's argument is an overly narrow view of Murray's motivational prong when applied to the facts of this case. His position takes the analysis away from what officers may discover during an illegal search and the bar on using that information in obtaining a warrant, towards a simple inquiry into whether officers ever had an intent to get a warrant. In this case, where the Government concedes that it did not have such an intent at the time of the search, stopping the analysis at that concession is not an adequate balancing of the societal interests embodied in the independent source doctrine. See Murray, 487 U.S. at 537; Markling, 7 F.3d at 1315-16. The different wordings of the motivational inquiry are designed to get to the same issue, which is whether any information gleaned from an illegal search motivated officers to seek a warrant. See Murray, 487 U.S. at 542; Silverthorne, 251 U.S. at 392; Markling, 7 F.3d at 1315-16. Basinski's argument also overlooks the idea that Murray's motivational inquiry is intended to weed out confirmatory searches, of which there is no evidence in this case. LaFave, supra, § 11.4(f) at 299-303. In short, the independent source doctrine is concerned with the use of information that officers obtain in violation of the

Fourth Amendment, instead of a rote determination of whether the officers ever intended to obtain a warrant. Accordingly, the court finds Basinski's position unpersuasive.

Thus, the court turns to the issue of whether anything found in the February 23, 1999 search prompted the officers to obtain the warrant on January 24, 2001. There are a couple of caveats that the court must consider in making this determination. First, the Government's stated reason for seeking a warrant is not to be given dispositive effect. Murray, 487 U.S. at 540 n. 2. If the facts render the stated reason for obtaining a warrant implausible, the independent source doctrine does not apply. Id.; see also LaFave, supra, § 11.4(f) at 299-303. Second, it can be difficult for the police to demonstrate a truly independent basis for seeking a warrant when they have retained possession of challenged evidence, as is what happened in this case. Murray, 487 U.S. at 542.

Despite these caveats, the court finds that the Government did not have an improper motive in seeking the warrant, and that the independent source doctrine should apply. The Government states that the reason it sought a warrant was the outcome of the suppression litigation in case number 99 CR 196. This stated reason is plausible, and is supported by the factual record. The Seventh Circuit's opinion in Basinski was issued on September 5, 2000. According to the Seventh Circuit's computer docket, the Government then moved for a rehearing en banc, which was denied on November 2, 2000. Approximately ten weeks later, the Government sought the warrant, and made full disclosure to Chief Judge Aspen. Therefore, the record supports the Government's stated reason that the Seventh Circuit's decision in case number 99 CR 196 prompted the decision to seek the warrant. This stated reason is not based on anything found in the briefcase on February 23, 1999 or thereafter, and is not an invalid reason to seek a warrant that would bar the application of the

12

independent source doctrine. See United States v. Mulder, 889 F.2d 239, 241 (9th Cir. 1989); United States v. Johnson, 994 F.2d 980, 986-88 (2nd. Cir. 1993).

The Mulder and Johnson opinions, while not precisely on point, offer guidance. The Mulder case is actually two opinions, which the court will refer to as Mulder I and Mulder II. In Mulder I, the Government conducted a warrantless seizure of pills from a hotel room, and subjected the pills to sophisticated testing that established the pills were contraband. See United States v. Mulder, 808 F.2d 1346, 1348-49 (9th Cir. 1987). The District Court denied Mulder's motion to suppress, but the Ninth Circuit reversed. Id. After the reversal and remand, the Government obtained a warrant and re-tested the pills, which led to Mulder II. See United States v. Mulder, 889 F.2d 239 (9th Cir. 1989). In Mulder II, the District Court again denied Mulder's motion to suppress on the basis of probable cause developed prior to and independently of the initial warrantless search. Id. at 240. On appeal, the Ninth Circuit applied the independent source doctrine, despite the fact that there was a two year delay between the initial warrantless search and the subsequent issuance of a warrant and re-testing of the pills. Id. at 240-42. The Ninth Circuit reasoned that motivation to seek the warrant was independent of the initial search, and that the time delay resulted from the appeals process rather than any improper delay on the part of the Government. Id. This situation is similar to the case at bar, in that there is a similarly long delay due to the appeal of a motion to suppress. Also similar is that there were ample independent facts to establish probable cause, as is true here.

In Johnson, Government agents seized audio tapes and listened to them on the mistaken belief that they did not need a warrant to do so. Johnson, 994 F.2d at 987. Once the District Court expressed reservations about the agents' warrantless review of the tapes, the agents sought and received a warrant. Id. The Second Circuit ruled that the Government's reliance on the District

Court's unease with the warrantless search was not an improper motivation to seek a warrant. Id. The case at bar is analogous, in that the Government sought a warrant soon after it lost the suppression litigation in 99 CR 196. Both Mulder and Johnson are distinguishable from the instant case, but there are enough similarities that they offer guidance to the court here.

Basinski's cited authorities are not persuasive. For example, Basinski cites United States v. David, 943 F. Supp. 1403, 1417-18 (E.D. Va. 1996), but the language he quotes from David is dicta, and sheds little light on the independent source doctrine and the facts of this case. Similarly unpersuasive are United States v. Madrid, 152 F.3d 1034 (8th Cir. 1998); United States v. Eberle, 993 F. Supp. 794 (D. Mont. 1998); and United States v. Maxwell, 738 F. Supp. 1043 (S.D. Tex. 1990), on reh'g, 734 F. Supp. 280 (S.D. Tex. 1990). These cases concerned egregious governmental behavior, such as the warrantless ransacking dwellings and detention of innocent occupants, of which the courts were sharply critical. See e.g. Madrid, 152 F.3d at 1035-37 &1041 (inevitable discovery doctrine not applicable where initial search was unjustified given absence of exigent circumstances, and court was not convinced the warrant was supported by probable cause or unaffected by illegally obtained information); Eberle, 993 F. Supp. at 799-800 (police "assumed the role of the neutral magistrate" by discussing relevant case law, unaided by an attorney or judge, and decided to enter the defendant's home without a warrant); Maxwell, 738 F. Supp. at 1045-47 (unjustified search based on officer's gross over-generalization that "crooks are dangerous," and not on objectively valid exigent circumstances), on reh'g, 734 F. Supp. at 281-85. By contrast, there is no evidence that the Government acted with such abandon in this case.

Basinski avers that the record is not clear as to why the Government did not seek a warrant at or near the time of the February 23, 1999 search. The Seventh Circuit's opinion points out that

14

the Government's failure to seek a warrant in February 1999 may have been a mistaken legal conclusion that no warrant was necessary, or that the FBI agents wanted to confirm that they had the correct briefcase. See Basinski, 226 F.3d at 833 n. 1. This is of no moment, because the motivational inquiry goes to what prompted the Government's decision to get a warrant when it did, rather than the decision to forego obtaining a warrant at the time of a search. See Johnson, 994 F.2d at 987.

Basinski also argues that it "blinks reality" to believe that the Government's decision to seek a warrant almost two years after the February 23, 1999 warrantless search was not prompted by evidence obtained in that search. This argument, taken to its extreme, effectively vitiates the independent source doctrine. Adopting Basinski's view would bar the independent source doctrine in nearly every case where officers discover evidence in an illegal search, and then seek a warrant based on independent probable cause. A party seeking to suppress evidence offered under the independent source doctrine must do more than simply point out that the Government's initial knowledge of challenged evidence occurred in violation of the Fourth Amendment. See United States v. May, 214 F.3d 900, 905-07 (7th Cir. 2000) (applying the independent source doctrine); Gravens, 129 F.3d at 980-82 (same); Liss, 103 F.3d at 621-22 (same); Clemens, 58 F.3d at 319-21 (same); Walton 56 F.3d at 553-54 (same); Johnson, 994 F.2d at 986-88 (same); Mulder 889 F.2d at 240-42 (same).

Moreover, all of the facts and evidence submitted to Chief Judge Aspen in the warrant application were in existence prior to February 23, 1999. The court recognizes that Murray's first inquiry focuses on the information submitted in support of a search warrant to ensure that the information is independent of any Fourth Amendment violation. But, that same information is also

relevant to the motivational inquiry. Cf. United States v. Grosenheider, 200 F.3d 321, 328 (5th Cir. 2000) (examining the submissions to obtain a search warrant, and finding that the decision to seek a warrant was not prompted by illegally discovered evidence). If an officer relies extensively on illegally obtained information in seeking a warrant, there is a strong inference that that information prompted the officer to seek the warrant. Such an inference leads to the conclusion that there is no attenuation between illegally obtained information and a later warrant. That is not the case here. The Government's submission to Chief Judge Aspen contained a wealth of information to support probable cause, all of it preceding the February 23, 1999 search of the briefcase, and all of it stemming from the Government's lengthy investigation into the alleged jewelry theft conspiracy. See United States v. Walton, 56 F.3d 551, 553-54 (4th Cir. 1995) (reasoning that a lengthy prior investigation of the defendant demonstrated the necessary attenuation and independent basis of probable cause to apply the independent source doctrine). The Government was also candid with Chief Judge Aspen, informing him of the warrantless search and the Seventh Circuit's opinion in Basinski. These facts support a finding of attenuation between the February 23, 1999 search and the January 24, 2001 warrant.

Finally, Basinski argues that application of the independent source doctrine to this case would undermine the police deterrence policy behind the exclusionary rule, and encourage a "search first - warrant later" mentality. This argument is unpersuasive. The entire process of analyzing the independent source doctrine is to balance police deterrence against the interest in presenting probative evidence of crimes to a jury. Murray, 487 U.S. at 537 (quoting Nix, 467 U.S. at 443); Terzado-Madruga, 897 F.2d at 1115. Indeed, in Murray, the Supreme Court rejected a deterrence argument identical to the one Basinski advances here. Murray, 487 U.S. at 540. The Court held that

the deterrence policy of the exclusionary rule remains in effect because Government agents relying on the independent source doctrine risk suppression of evidence, and increase their burden from one of probable cause to "the much more onerous burden of convincing a trial court that no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it." Id.; see also Herrold, 962 F.2d at 1444 (noting that the independent source doctrine upholds the policy of police deterrence because there is no "incentive to search first without a warrant, because any information discovered in an unlawful search is useless to the police in a subsequent warrant application."). Therefore, the court must reject Basinski's deterrence argument.

In sum, the court finds that applying the independent source doctrine to this case is appropriate. It is undisputed that there is ample evidence of probable cause to search Basinski's briefcase, all of it independent of and pre-dating the February 23, 1999 warrantless search of the briefcase. The Government's proffered reason for seeking a warrant, the outcome of the suppression litigation in 99 CR 196, is a valid reason to seek a warrant, and is not based on anything learned from the February 23, 1999 search. These facts demonstrate that there is sufficient attenuation between the initial warrantless search and the subsequent re-search pursuant to a warrant to apply the independent source doctrine. Excluding the evidence would put the Government in a worse position than it would have been absent the warrantless search. Basinski's argument to the contrary is not persuasive.

## B.    Collateral Estoppel:

In his opening brief, Basinski asserted that the doctrines of collateral estoppel, res judicata, and law of the case bar this suppression litigation. The law of the case argument was a cursory

argument, made without citation to authority, and the res judicata argument was supported by minimal citations. Basinski never analyzed or argued the facts of this case under either the law of the case doctrine or res judicata, and in his reply brief, Basinski relies exclusively on the collateral estoppel argument, and makes no mention of either law of the case or res judicata. This failure to adequately develop the issues can be considered a waiver. See United States v. Jones, 224 F.3d 621, 626 (7th Cir. 2000) (refusing to consider an undeveloped argument). Nevertheless, out of an abundance of caution, the court will consider all of Basinski's arguments.

In Ashe v. Swenson, 397 U.S. 436 (1970), the Supreme Court held that the common law doctrine of collateral estoppel applies in federal criminal prosecutions. Ashe, 397 U.S. at 443-44. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id. at 443. Ashe arose out of an armed robbery of six men, who were playing poker at the time of the robbery. Id. at 437-38. Bob Ashe was charged with the robbery of one of the victims, but was acquitted because of flimsy identification evidence. Id. at 437-40. The state then charged him with the armed robbery of another victim, and he was convicted based on stronger identification testimony. Id. The second conviction was not a violation of Ashe's double jeopardy rights because "robbing player 2 was not the 'same offense' as robbing player 1." United States v. Bailin, 977 F.2d 270, 275-76 (7th Cir. 1992) (analyzing the Supreme Court's ruling in Ashe and quoting State v. Ashe, 350 S.W.2d 768, 770 (Mo. 1961)). Nevertheless, the Supreme Court found the principles of due process prohibited re-litigating the identification of Ashe as one of the armed robbers. Ashe, 397 U.S. at 445-46. Basinski asserts that the collateral estoppel principle announced in Ashe

18

prohibits the Government from asserting the independent source doctrine and re-litigating the admissibility of the evidence obtained from the briefcase. The argument is not persuasive.

Neither party has cited authority directly on point, where the Government has lost suppression litigation, and then applied for and received a warrant under the independent source doctrine. But, as the Government argues, the issue in the case at bar is different from the issue before the Seventh Circuit in Basinski. A necessary element for the application of collateral estoppel is that the parties contest an issue of fact identical to one that has been previously decided. See United States v. Salerno, 108 F.3d 730, 741 (7th Cir. 1997) (stating that "'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'") (quoting Ashe, 397 U.S. at 443); Bailin 977 F.2d at 274 (same). In Basinski, the Seventh Circuit decided the admissibility of evidence obtained from Basinski's briefcase during the warrantless February 23, 1999 search. Basinski, 226 F.3d at 833-39. The issues here are quite different: the applicability of the independent source doctrine and the admissibility of the same evidence found during the search executed pursuant to the January 24, 2001 warrant. The factual portions of this independent source analysis, which are the existence of probable cause based on the materials submitted to Chief Judge Aspen on January 24, 2001 and the Government's motivation for seeking the warrant, have not been previously determined. Therefore, the identity of issues necessary for collateral estoppel is lacking, and collateral estoppel is inapplicable.

In addition to Ashe, Basinski relies on United States ex rel. DiGiangiemo v. Regan, 528 F.2d 1262 (2nd Cir. 1975); United States v. McKim, 509 F.2d 769 (5th Cir. 1975); and United States v. Evans, 655 F. Supp. 243 (E.D. La. 1987). All of these cases are distinguishable from the case at bar.

19

Indeed, not one of the cases analyzes an application of collateral estoppel in an independent source case. For example, Basinski relies heavily on a hypothetical and dictum from <u>DiGiangiemo</u>, but the hypothetical did not involve the subsequent issuance of a warrant based on the independent source doctrine. <u>DiGiangiemo</u>, 528 F.2d at 1265.[3]

Similarly, the <u>McKim</u> opinion is factually distinguishable from the case at bar. <u>McKim</u> involved a prosecution for escape from federal custody, and an earlier prosecution for possession of marijuana. See <u>McKim</u>, 509 F.2d at 771. McKim was arrested for possession of marijuana, but escaped from custody before he could be brought before a magistrate judge. <u>Id.</u> He was quickly recaptured, and went to trial on the marijuana charge. <u>Id.</u> at 771-72. McKim was convicted, but the decision was reversed when the Fifth Circuit ruled that the initial stop of McKim was based on neither reasonable suspicion nor probable cause. <u>See id.</u> (citing <u>United States v. McKim</u>, 487 F.2d 305 (5th Cir. 1973)). At trial on his escape from federal custody charge, the Fifth Circuit ruled that

---

[3]The hypothetical states:

> Defendant X is the subject of two indictments in two counties, one for bank robbery, the other for having stolen an automobile to be used as the getaway car. He pleads not guilty to both charges and notifies the state that he proposes to prove an alibi, which will exonerate him of both offenses, and for which he has strong support. The state's reliance will be on weak identification evidence and a confession to both crimes. The bank robbery charge is to be tried first. X moves to suppress the confession on a number of grounds - use of physical violence; deprivation of food, water, and rest; promises of immunity, etc. Both sides recognize that determination of the motion [to suppress] will very likely decide the case. After a hearing of several days, a judge suppresses the confession. The state elects not to exercise a right to appeal, drops the bank robbery indictment, and indicates its intention to press the stolen car indictment. X moves again to suppress the confession. The states insists on a hearing, saying it has new evidence to rebut X's claims. Does due process permit it to be given one?
> We think not.

<u>DiGiangiemo</u>, 528 F.2d at 1265.

20

the Government was collaterally estopped from re-litigating the determination that Government agents lacked reasonable suspicion and probable cause to arrest McKim in the first place. McKim, 509 F.2d at 776. Nothing in the McKim decision concerns the application of collateral estoppel to the independent source doctrine.

The same is true for Evans. In that case, the Government brought charges against Evans in the District of Connecticut. Evans, 655 F. Supp. at 243. In the Connecticut prosecution, Evans brought a motion to suppress certain evidence seized from an apartment. Id. Part of the Government's opposition to the motion to suppress was based on the independent source doctrine. Id. at 243-44. The District of Connecticut granted Evans' motion, and the Government chose to dismiss the indictment rather than appeal. Id. at 244. The Government then sought to introduce the same evidence against Evans in a prosecution that was pending against her in the Eastern District of Louisiana. Id. The Court ruled that collateral estoppel applied because all issues, including the independent discovery doctrine, had already been decided by the District of Connecticut. Id. at 244-46. There had not been any change in circumstances between the motion to suppress in the District of Connecticut and the one in the Eastern District of Louisiana. Id. Instead, the suppression litigation in the Eastern District of Louisiana was a re-hashing of the earlier litigation. Id. In short, none of Basinski's cited authorities persuade the court to apply collateral estoppel as a bar to this suppression litigation.

The parties also argue over whether collateral estoppel applies through the Fifth Amendment's double jeopardy clause. The Government asserts that collateral estoppel only applies through double jeopardy principles, in that the doctrine cannot apply until jeopardy attaches.

Basinski asserts that this is analytically incorrect, and that the application of collateral estoppel is mutually exclusive from that of double jeopardy. Neither party is precisely correct.

As Basinski argues, collateral estoppel is a due process concept, which necessarily operates outside the scope of double jeopardy. See Bailin, 977 F.2d at 275 & 276 n. 7, 8 (explaining that the application of collateral estoppel is limited to situations where double jeopardy does not apply). If that were not the case, the idea of collateral estoppel in criminal cases would be superfluous. Id. But, the Seventh Circuit has announced procedural rules for the application of collateral estoppel, which limit the application of collateral estoppel to situations that exist only after jeopardy has attached. See Salerno, 108 F.3d at 741. First, the court should not apply collateral estoppel in a hypertechnical manner. Id. Instead, the court should "examine the pleadings, evidence, charge, and other relevant matter to determine whether a rational jury could have based its verdict on an issue other than the one the defendant seeks to foreclose from consideration." Id. Second, the doctrine only applies when a relevant issue in the later prosecution is "an 'ultimate issue,' i.e. an issue that must be proven beyond a reasonable doubt." Id. "Third, the defendant bears the burden of proving that this ultimate issue was necessarily determined by the prior jury." Id. These rules plainly contemplate resolution of issues of fact by a trier of fact. In a criminal case, there can be no such resolution until jeopardy attaches. See Downum v. United States, 372 U.S. 734, 737-38 (1963) (jeopardy attaches in a jury trial when the jury is impaneled and sworn) and Serfass v. United States, 420 U.S. 377, 388-89 (1975) (jeopardy attaches in a bench trial when the judge begins to hear the evidence). This is not to say that jeopardy is a sine qua non of collateral estoppel. Rather, the procedural rules are such that jeopardy occurs before the court can determine whether collateral estoppel applies. See Salerno, 108 F.3d at 741. This case is not at the stage where there has been

22

any decision by any trier of fact, rendering collateral estoppel inapplicable. The Seventh Circuit's procedural rules are another, independent, basis on which to find that collateral estoppel does not apply to this case.

Turning to res judicata, the court finds Basinski's argument without merit. Basinski asserts that the doctrine of res judicata applies in criminal cases, and that under the doctrine, all claims that were raised or could have been raised may not be re-litigated between the same parties. Compare Rekhi v. Wildwood Indus., Inc., 61 F.3d 1313, 1316-17 (7th Cir. 1995) (discussing the differences between collateral estoppel, or issue preclusion, and res judicata, or claim preclusion). Assuming for the purposes of this opinion that Basinski's characterization of res judicata is accurate, he fails to explain how the doctrine applies to the facts of this case. As discussed above, the current suppression litigation is separate from the Seventh Circuit's decision in Basinski, 226 F.3d at 833-39. The issues here, Chief Judge Aspen's issuance of a warrant and the Government's motivation in seeking the warrant, could not have been raised earlier because they did not exist. Basinski ignores this reality. Accordingly, the court rejects Basinski's res judicata argument.

Basinski's law of the case argument is also without merit. The law of the case doctrine simply means that "matters decided on appeal become the law of the case to be followed" in subsequent proceedings. Unity Ventures v. County of Lake, 894 F.2d 250, 252 (7th Cir. 1990) (citations omitted). "Of course, the doctrine can be applied only if a party attempts to reargue the *same* matter" in subsequent proceedings. Id. (emphasis in original). Again, as the court has stated several times, the issues in this motion are not the same matters that were presented to the Seventh Circuit in Basinski. Thus, the law of the case doctrine is inapposite.

In sum, Basinski's arguments based on collateral estoppel, res judicata, and law of the case are without merit. The factual and legal issues here are different from those presented to the Seventh Circuit in <u>Basinski</u>. Nothing in Basinski's arguments raise a Constitutional impediment to the introduction of Basinski's briefcase evidence at trial in this case.

### III.   CONCLUSION

For the foregoing reasons, Basinski's motion to suppress is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, SR.

DATED: 7-11-01