# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 0853 | **DATE** | 7/26/2001 |
| **CASE TITLE** | United States vs. William Hanhardt, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is the motion of William Hanhardt to continue the trial date. The motion is denied. See full opinion.

*Charles R. Norgle Sr.*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | |
| ✗ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |

number of notices

JUL 3 0 200

date docketed

docketing deputy initials

ED-7
FILED FOR DOCKETING
01 JUL 27 PM 2: 22

courtroom deputy's initials

Date/time received in central Clerk's Office

date mailed notice

mailing deputy initials

**Document Number**

173

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 00 CR 0853 |
| | ) | |
| vs. | ) | HONORABLE CHARLES R. NORGLE |
| | ) | |
| WILLIAM A. HANHARDT; JOSEPH | ) | |
| N. BASINSKI; PAUL J. SCHIRO, | ) | **DOCKETED** |
| SAM DESTEFANO, GUY ALTOBELLO | ) | |
| and WILLIAM R. BROWN, | ) | JUL 3 0 2001 |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, Sr., District Judge:

Before the court is the motion of Defendant William Hanhardt to continue the September 4,

2001 trial date. For the following reasons, the motion is denied.

## I.   BACKGROUND

This case, which has previously been before the court on other issues[1], arises out of an

alleged organized crime conspiracy to commit jewelry thefts. Currently at issue is Hanhardt's

motion to continue the trial. Each of Hanhardt's Co-Defendants has filed a similar motion to

continue, where Co-Defendants join in Hanhardt's motion, and raise individual arguments to

continue.[2] This opinion is limited to Hanhardt's motion to continue. The court does not address any

---

[1]See United States v. Hanhardt, No. 00 CR 853, 2001 WL 826896 (N.D. Ill. July 17, 2001)
(denying alternative motion to sever); United States v. Hanhardt, – F. Supp. 2d –, No. 00 CR 853,
2001 WL 804569 (N.D. Ill. July 10, 2001) (denying motion to suppress); United States v. Hanhardt,
134 F. Supp. 2d 972 (N.D. Ill. 2001) (denying motion to recuse).

[2]One of Hanhardt's Co-Defendants remains a fugitive.

of Co-Defendants' motions, and they remain under advisement. A discussion of the procedural background of the case is necessary to place the issues in context.

The original indictment was returned on October 19, 2000. (R. 1.) The indictment contained two counts stemming from the alleged conspiracy. On the same day of the indictment, attorney Thomas Decker filed his appearance as Hanhardt's counsel. (See R. 10.) Hanhardt was arraigned, and entered a plea of not guilty. (See R. 9.)

The court conducted a status hearing on October 26, 2000, and ordered a discovery conference to be held within ten days pursuant to Local Criminal Rule 16.1. (See R. 32.) The court also set a schedule for pretrial motions, with Defendants' pretrial motions due within 21 days, the Government's response due 14 days thereafter, and Defendants' replies due 7 days thereafter. (See id.) The court then set a jury trial for January 22, 2001. (Id.)

Beginning in late October 2000, and continuing into December 2000, the Government provided copies of discovery materials to Defendants consisting of approximately 21,000 pages of documents. These documents included: (1) applications for and extensions of Title III wire intercepts and pen register i.d. devices, the affidavits submitted in support of the Title III orders, and the Title III orders themselves; (2) transcripts of the wire intercepts; and (3) F.B.I. 302 materials.[3]

On November 15, 2000, all Defendants filed an emergency joint motion to extend time in which to file pretrial motions, and to continue the January 22, 2001 trial date. (R. 61.) Defendants asked for pretrial motions to be due September 17, 2001, and for an unspecified trial date thereafter. (Id.) The court held a hearing the following day, November 16, 2000. The court and counsel

_____

[3]302 materials are F.B.I. interview reports. See e.g. United States v. Muhammad, 120 F.3d 688, 692 (7th Cir. 1997); United States v. Marks, 816 F.2d 1207, 1210 (7th Cir. 1987).

discussed the extent of the documents turned over by the Government, and the amount of time defense counsel needed to review that material. (See R. 88-3, Tr. of Nov. 16, 2000, pp. 5-25.) The court noted that it should not force the case to trial too early, and that it was clear that the original trial date of January 22, 2001 was too early a date. (See id. at 22-23.) The court rejected the suggested date for pre-trial motions, September 17, 2001, but struck the scheduled trial date, granted Defendants until January 19, 2001 to file their pretrial motions, and kept January 22, 2001 as a status hearing date. (See id. at 22-25.)

At the same hearing on November 16th, the Government indicated that it was going to bring a superseding indictment. The following exchange took place concerning the superseding indictment:

> MR. SCULLY [Assistant United States Attorney]: Just one other matter your Honor.
> There is going to be a minor - - there is going to be a superseding indictment, just to correct two errors in the indictment. One has to deal with a reference back to a wrong paragraph, and the other was some language that kind of dangled on at the end of a paragraph.
>
> THE COURT: Well, it will require rearraignment.
>
> MR. SCULLY; It doesn't substantively change, but it might well - - it might well require arraignment.

(R. 88-3, Tr. of Nov. 16, 2000, pg. 27.) The Government filed the superseding indictment on November 16, 2000. (R. 56.)

On November 29, 2000, the court re-arraigned Defendants on the superseding indictment. (See R. 66 & 67.) Defendants waived their rights to be present for re-arraignment. (See id.)

In December 2000, Hanhardt retained new counsel, Thomas Sullivan, the former United States Attorney and a partner at a large law firm.[4] On December 15, 2000, the court granted Hanhardt's motion to substitute Thomas Sullivan for Thomas Decker (R. 77), and granted Thomas Decker leave to withdraw his appearance as Hanhardt's counsel. (See R. 78.)

On January 10, 2001, Defendants brought two more motions. The first was a motion to recuse (R. 90), to which the court ordered briefing. Defendants' memorandum in support of the motion to recuse was due January 19, 2001, with the Government's response due January 26, 2001. (See R. 90.) Upon an agreed motion, this schedule was later extended so that Defendants' memorandum was due January 23, 2001, with the Government's response due January 30, 2001. (See R. 94.)

The second January 10, 2001 motion was to extend the time in which to file pretrial motions. (See R. 89.) Defendants asserted that they needed additional time to review discovery materials and prepare their pre-trial motions, and asked that pre-trial motions be due no earlier than May 18, 2001. (See id.) The court ruled on this motion from the bench, granting Defendants until March 1, 2001 to file routine pre-trial motions, and until May 18, 2001 to file complex pre-trial motions. (See R. 91.) The court also set briefing schedules for any pre-trial motions filed on these dates. (See id.)

On March 1, 2001, Defendants filed a motion for additional discovery from the Government, seeking further information to use in preparing anticipated motions to suppress evidence obtained from the Title III intercepts. (See R. 116.)

---

[4]Mr. Sullivan is being assisted with this case by at least two associates, Ms. Carolyn Pelling Gurland and Mr. Jeffrey Silver.

On March 14, 2001, the court denied Defendants' motion to recuse. See Hanhardt, 134 F. Supp. 2d at 975-77. On April 20, 2001, Hanhardt filed a petition for mandamus in the Seventh Circuit, asking the Seventh Circuit to order this court's recusal. (See Seventh Cir. Docket in 01-1977.) Three days later, on April 23, 2001, Hanhardt's Co-Defendant Joseph Basinski filed a similar petition for mandamus. (See Seventh Cir. Docket in 01-1999.)

On May 7, 2001, the court held a status hearing, where Hanhardt requested an additional extension of time in which to file complex pre-trial motions. (See Tr. of May 7, 2001, pp. 9-12.) Hanhardt asked that he have until June 29, 2001 to file complex pre-trial motions because of the amount of discovery that the Government had produced. (See id.) After Hanhardt's Co-Defendants joined in the motion for additional time, the court stated:

> THE COURT: I'm going to grant the motion in part but deny it in part.
> We will continue the date from May 18th to June 1st, which is two additional weeks. And on a very strong showing the Court might grant yet another extension from June 1st, but it will not be enough to say that "There is so much material that we can't quite analyze it all and deal with it in order to meet these deadlines."

(Id. at pg. 12.) The court then advised the parties that it anticipated the case going to trial in the fall of 2001:

> THE COURT: . . . .
> And if at all possible, on June 1st or close to June 1st the Court will attempt to set a trial date in this case, and I think the objective should be early fall.
> So, counsel, when you are preparing your schedules otherwise, keep that in mind.

(Id.) At that time, Hanhardt's counsel informed the court that he was counsel in a civil arbitration that was scheduled to proceed on September 17, 2001:

MR. SULLIVAN [Hanhardt's counsel]: Your Honor, I want to reiterate what Mr. Podliska said to you, and that is that on September 17th I am to begin a trial before Judge - - or, Frank McGarr as an arbitrator that's been set for a long time, and that's a firm commitment that I have.

THE COURT: Well, things change from time to time.

MR. SULLIVAN: They do. They do. I will keep you advised if it changes.

THE COURT: Yes. And you can do that on June 6th certainly. Tell me.

(Id. at 14.)

On May 16, 2001, Hanhardt filed another motion to extend the time in which to file complex pre-trial motions to June 29, 2001. (R. 125.) Hanhardt again asserted the amount of discovery materials as a reason for the extension. (See id.) Hanhardt also presented an affidavit from an associate working on the case, Jeffrey Silver, which indicated that Mr. Silver unfortunately had a serious health issue that needed attention. (See id.) The court expressed concern for Mr. Silver, and granted Hanhardt's motion setting June 29, 2001 as the due date for complex pre-trial motions. (R. 126.) The same day, the court set the trial date for the case as September 4, 2001. (R. 127.)

On May 21, 2001, Hanhardt filed a supplemental brief in the Seventh Circuit on his petition for mandamus. The Seventh Circuit denied the petition on May 24, 2001. (See Seventh Cir. Order of May 24, 2001 in App. Doc. Nos. 01-1977, 01-1999.) On June 7, 2001, Hanhardt and Basinski petitioned the Seventh Circuit for rehearing en banc, which was denied on June 15, 2001. (See Seventh Cir. Order of June 7, 2001 in App. Doc. Nos. 01-1977, 01-1999.)

All of this brings the court to Hanhardt's motion to continue, which he filed on June 28, 2001. As noted, the trial date is scheduled for September 4, 2001. Hanhardt moves the court to set

the matter for trial some time after January 2, 2002, or almost four months later.[5]  Hanhardt puts

forth two reasons for a continuance: (1) his counsel's representation of Ortho Biotech, Inc. in an

arbitration said to be scheduled for September 17, 2001; and (2) his counsel's stated need for more

time to prepare this case for trial due to what counsel claims are the complexity of facts and issues,

and the volume of written material turned over by the Government.  The Government objects,

arguing: (1) that counsel's scheduling conflict between the Ortho Biotech arbitration and this case

is not reason to continue this trial; and (2) that Hanhardt's lawyers will have had adequate time to

prepare for trial by September 4, 2001.  As discussed below, the court agrees with the Government,

and denies Hanhardt's motion.

## II.  DISCUSSION

The decision to grant or deny a motion to continue is committed to the broad discretion of

the trial court.  Morris v. Slappy, 461 U.S. 1, 11 (1983); United States v. Tingle, 183 F.3d 719, 722

(7th Cir.1999); United States v. Depoister, 116 F.3d 292, 294 (7th Cir.1997); United States v.

Windsor, 981 F.2d 943, 948 (7th Cir.1992); United States v. Rasmussen, 881 F.2d 395, 400 (7th

Cir.1989); United States v. Manos, 848 F.2d 1427, 1434 (7th Cir.1988); United States v. Rodgers,

755 F.2d 533, 539 (7th Cir.1985).  As a matter of discretion, the decision is properly left to the

integrity and independence of the judiciary.  Thus, the court's decision will withstand scrutiny,

unless the court chooses "an option that was not within the range of permissible options from which

[a reviewing court] would expect the trial judge to choose under the given circumstances."

Depoister, 116 F.3d at 294 (citations omitted.); see United States v. Koen, 982 F.2d 1101, 1115 (7th

---

[5]Hanhardt repeatedly claims that he seeking only a three month continuance, but that is inaccurate.  A three month delay would have this trial starting on December 4, 2001.

Cir. 1992); see also Manos, 848 F.2d at 1434 (noting that a question of continuance "must be decided on a case by case basis in the light of the circumstances presented, particularly the reasons for continuance presented to the trial court at the time the request is denied. . . ."); United States v. Davis, 604 F.2d 474, 480 (7th Cir.1979) ("Reported decisions offer little guidance [in reviewing rulings on continuances]; each decision necessarily turns on the particular facts and circumstances of the case.").

"'It is critically important that a trial court be able to maintain control over its calendars and that a trial date once set must be adhered to unless there are compelling reasons for granting a continuance.'" United States v. Bush, 820 F.2d 858, 860 (7th Cir.1987) (quoting Stevens v. Greyhound Lines, Inc., 710 F.2d 1224, 1230 (7th Cir.1983)); see also Morris, 461 U.S. at 11 (trial judge's burden of coordinating a trial date "counsels against continuances except for compelling reasons."); United States v. Reynolds, 189 F.3d 521, 527 (7th Cir. 1999) (citing Bush). This basic tenet cannot be overstated. Respect for the judiciary demands that the court sets its schedule pursuant to the salient circumstances, and that that decision not be disturbed absent compelling reasons to do so. Cf. Shaikhs v. Immigration and Naturalization Svc., 181 F.3d 823, 825 (7th Cir. 1999) (in a different context noting that "'[t]he sparsity of case law on the question suggests not that the principle is dubious but that it is too obvious to have incited many challenges.'") (quoting Amati v. City of Woodstock, 176 F.3d 952, 955-56 (7th Cir. 1999)). With these principles in mind, the court addresses each of Hanhardt's arguments.

## A.    Ortho Biotech Arbitration:

Hanhardt asserts that the court must continue this case because his lead counsel has a scheduling conflict between the case at bar and the civil arbitration in Amgen, Inc. v. Ortho Biotech,

Inc. Hanhardt avers that the arbitration is scheduled to begin on September 17, 2001, and that the trial date of September 4, 2001 in this case needlessly forces counsel to choose between withdrawing as counsel for Hanhardt or breaching his professional obligations in the Ortho Biotech arbitration. The argument is not persuasive.

Where, as here, defense counsel moves for a continuance based on a scheduling conflict, the court must consider the defendant's Sixth Amendment rights. The Sixth Amendment guarantees a criminal defendant the right to assistance of counsel, including a limited right to counsel of choice. U.S. Const. amend. VI; see also Powell v. Alabama, 287 U.S. 45, 53 (1932) (Sixth Amendment provides a defendant a "fair opportunity to secure counsel of his own choice."). While there is a presumption in favor of the defendant's counsel of choice, Wheat v. United States, 486 U.S. 153, 164 (1988), the right to counsel of choice "'is not absolute, but qualified, and must be balanced against the requirements of the fair and proper administration of justice.'" Rasmussen, 881 F.2d at 401 (quoting United States v. Micke, 859 F.2d 473, 480 (7th Cir.1988)). The focus of this Six Amendment inquiry is on the adversarial process, not the defendant's relationship with a particular lawyer. Wheat, 486 U.S. at 159 (citing United States v. Cronic, 466 U.S. 648, 657 n. 21 (1984)); United States v. Hughey, 147 F.3d 423, 431 (5th Cir.1998); Rodgers, 755 F.2d at 540 n. 4. As the Supreme Court has explained:

> [W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

Wheat, 486 U.S. at 159 (1988); see also Hughey, 147 F.3d at 432 (holding that the District Court's denial of motion to continue, even though it required counsel to withdraw due to a scheduling

conflict, protected the adversarial process and the defendant's substantial rights); cf. United States v. Messino, 181 F.3d 826, 830-31 (7th Cir.1999) ("The Sixth Amendment guarantees adequate counsel, not the best possible counsel.").

The Sixth Amendment right to counsel of choice does not encompass a right to counsel who cannot comply with the court's reasonable schedule. See Hughey, 147 F.3d at 429-30 (citing cases and discussing situations where a defendant's limited right to counsel of choice must yield); United States v. Delia, 925 F.2d 574, 575 (2nd Cir. 1991) ("The right to counsel of one's choice does not include a lawyer whose other commitments preclude compliance with a court's reasonable scheduling of its cases."). As Justice Brennan explained in his concurring opinion in Morris:

> The defendant's interest in preserving his relationship with a particular attorney is not afforded absolute protection. If the attorney is likely to be unavailable for an extended period, or if other factors exist that tip the balance in favor of proceeding in spite of a particular attorney's absence, the defendant's motion for a continuance clearly may be denied.

Morris, 461 U.S. at 25 (Brennan, J. concurring in the result (joined by Marshall, J)). Thus, "'where the inability of retained counsel to serve gives promise of unreasonable delay or inconvenience in completing the trial, the court may require the defendant to secure other counsel.'" Kleba v. McGinnis, 796 F.2d 947, 952 (7th Cir.1986) (quoting United States v. Cicale, 691 F.2d 95, 106 (2nd Cir.1982)). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." Morris, 461 U.S. at 11 (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)); see also United States v. Scopo, 861 F.2d 339, 342-44 (2nd Cir. 1988) (finding no abuse of discretion and no Sixth Amendment violation in denying a motion to continue).

When counsel seeks a continuance because of a scheduling conflict, the court cannot arbitrarily deny the motion when the effect is to deny the defendant's limited right to counsel of choice. See Morris, 461 U.S. at 11; see also Rasmussen, 881 F.2d at 401 & 402 (citing Morris, 461 U.S. at 11-12 and Ungar, 376 U.S. at 589); Hughey, 147 F.3d at 426-33 (holding that the District Court's denial of a motion to continue based on defense counsel's scheduling conflict was not arbitrary); Neal v. State of Texas, 870 F.2d 312, 316 (5th Cir. 1989) ("After a defendant has been given a fair or reasonable opportunity to obtain counsel of choice, the decision to grant or deny a continuance to permit a further opportunity to do so rests within the broad discretion of the trial court."). Thus, even though the court's scheduling is entitled to deference, the court must articulate its reasons for denying a motion to continue, and must exercise care when a criminal defendant's Sixth Amendment rights may be impacted. See Morris, 461 U.S. at 11; Rasmussen, 881 F.2d at 401 & 402; Hughey, 147 F.3d at 426-33; Neal, 870 F.2d at 316. This rule does not require the court to articulate its reasons for setting a particular trial date, for that decision rests within the court's discretion and should remain inviolate. It is only when a party asks the court to change its calendar that the court must state why it will or will not change a scheduled date. The district court's resolution of this issue, like other matters that affect continuances, is within the court's discretion. United States v. Brown, 79 F.3d 1499, 1505 (7th Cir.1996). The courts of appeal are "loathe to find error" when the district court's reasoned course of action ensures that the adversarial process is secure, and the defendant's substantial right to prepared and available counsel is protected. Hughey, 147 F.3d at 431. The district court's decision will stand unless its actions are not within the range of permissible options. Depoister, 116 F.3d at 294; Koen, 982 F.2d at 1115 (noting that the appellate court will "not second-guess the [denial of a motion to continue] that is in conformity with

11

established legal principles and, in terms of its application of those principles to the facts of the case, is within the range of options from which one could expect a reasonable trial judge to select.").

What constitutes an arbitrary denial of a motion to continue depends on the facts at hand. Depoister, 116 F.3d at 294; Manos, 848 F.2d at 1434; Davis, 604 F.2d at 480. The district court is in the best position to consider the salient circumstances and make a reasoned decision as to the best course of action. See United States v. Schwensow, 151 F.3d 650, 655-56 (7th Cir. 1998); Davis, 604 F.2d at 480. Some courts, notably in the Fifth Circuit, have announced a list of factors to consider in determining whether to grant a motion to continue when the denial of the motion may impact retained counsel's ability to stay on a case. See Hughey, 147 F.3d at 431-32. The Fifth Circuit's factors include: "(1) when the request for continuance was filed: (2) the nature of the reasons offered to support the continuance, particularly where there is reason to believe that those reasons are either less than candid or offered in bad faith; (3) the length of the requested delay; (4) the number of continuances previously granted; and, the great catch-all, (5) the general balance of convenience to the parties and the court." Id. (citing cases). The Seventh Circuit, by contrast, has not announced such a list of factors to apply in this situation. The Seventh Circuit has outlined factors that are relevant to a motion to continue due to alleged inadequate time to prepare, see e.g. United States v. Avery, 208 F.3d 597, 602 (7th Cir. 2000); Bush, 820 F.2d at 860, but that is a different issue than the one raised in a motion to continue that implicates the Sixth Amendment right to counsel of choice. See United States v. Uptain, 531 F.2d 1281, 1286 & 1289-90 (5th Cir.1976)). In terms of a conflict between counsel's schedule and the court's schedule, the Seventh Circuit examines whether the decision to deny the continuance was arbitrary in light of the salient circumstances. United States v. Santos, 201 F.3d 953, 958-59 (7th Cir. 2000); Rasmussen, 881 F.2d at 401 & 402.

Thus, the court will analyze Hanhardt's motion and his proffered reasons for continuing the trial date in light of the salient circumstances. The court will also examine the factors announced by the Fifth Circuit because they provide guidance, and Hanhardt argues his motion under those factors.

**1.    Salient Circumstances:**

Hanhardt contends that the court should continue the September 4, 2001 trial date to accommodate his counsel's arbitration schedule. Hanhardt avers that the arbitration is scheduled to begin on September 17, 2001, with former United States District Court Judge Frank McGarr presiding.[6] According to Hanhardt, the arbitration proceedings began in 1985, and involve a pharmaceutical product licensing agreement. The matter scheduled for September 17, 2001 is purportedly the last in a series of arbitrations concerning the licensing agreement. Hanhardt's counsel claims that he was retained in May of 1999 to act as co-lead counsel in the arbitration. Hanhardt's counsel also avers that the arbitration outcome is extremely important to the parties, and that he has spent a great deal of time preparing for the arbitration and has developed a degree of expertise on the issues therein.

According to Hanhardt, on July 27, 2000, Mr. McGarr set a discovery schedule for the arbitration, with a fact discovery cutoff of August 1, 2001, and an expert discovery cutoff of August 31, 2001. There have purportedly been over 110 depositions taken, with an additional 35 to 40 depositions scheduled. Written discovery in the arbitration is said to consist of over six million pages of material.

Hanhardt's counsel asserts that the option of continuing the arbitration does not exist. In support of that assertion, he claims that "lawyers and witnesses from all parts of the country are

---

[6]Mr. McGarr retired from the federal bench in 1988.

involved, and it is the avowed intention of all to begin on September 17, 2001. . . ." (Mot. to Cont. pg. 8.) The only factual basis for this broad statement is an affidavit from Mr. McGarr dated May 16, 2001, which states in its entirety:

> I am the arbitrator in the case of Amgen, Inc., Claimant v. Ortho Biotech, Inc., Respondent. The trial is scheduled to being on September 17, 2001. There are four law firms, two from out of town, and a large number of ancillary personnel. It would create a genuine hardship to change this date and I do not intend to do so.

(Mot. to Cont. Ex. 5.) Hanhardt does not provide the information on which Mr. McGarr based this affidavit. There is no other factual support for the statement that all concerned with the arbitration have the avowed intention to proceed on September 17th.

Hanhardt argues that his counsel's prior commitment to the Ortho Biotech arbitration supersedes the court's scheduling of this case for trial on September 4, 2001, and that a denial of the motion to continue will have "devastating" consequences on his Sixth Amendment right to counsel of choice. In sum, Hanhardt claims that denial of his motion to continue violates his Sixth Amendment rights by "needlessly impos[ing] an impossible dilemma on Mr. Sullivan: Mr. Sullivan must either withdraw as Mr. Hanhardt's lawyer, thus forcing Mr. Hanhardt to obtain a new lawyer to defend this case (with inevitable lengthy delays and obvious constitutional implications), or Mr. Sullivan must breach his professional obligation to his clients Johnson & Johnson and Ortho Biotech by abandoning his long-standing professional commitment and withdrawing as its trial counsel." (Mot. to Cont. pg. 10.)

The Government objects, arguing that the Ortho Biotech arbitration should not take precedence over the case at bar. The Government further argues that the record does not support the assertion of Hanhardt's counsel that the arbitration date is immovable, and that counsel should move

for a continuance in the arbitration before seeking a continuance in this case. The Government claims that the public interest will be harmed if a private arbitration is to take precedence over a federal criminal trial, especially where one of the Defendants is being detained pending trial.

Thus, the salient circumstances are: (1) counsel's scheduling conflict, and the impact of the conflict on Hanhardt's limited right to counsel of choice; (2) the Government's objection to a continuance; and (3) the indictment in October 2000, the scheduled trial date of September 4, 2001, and the continuance requesting trial no earlier than January 2002. As discussed below, the court finds these circumstances are such that it should deny the motion to continue, with due regard for the alleged Sixth Amendment effect.

The alleged scheduling conflict of Hanhardt's counsel is insufficient reason to continue this trial. The burden of persuading the court to change a trial date is on the moving party, who needs to present compelling reasons to do so. See Morris, 461 U.S. at 11; Reynolds, 189 F.3d at 527; Bush, 820 F.2d at 860. It takes more than counsel's claim of a crowded schedule to carry this burden. The court's schedule is a matter of necessary discretion, see Morris, 461 U.S. at 11; Bush, 820 F.2d at 860, and should not be subordinated to the schedules of the lawyers that appear before it. The judicial system depends on lawyers, as officers of the court, to accept cases and clients only to the extent that the lawyer is able to adequately represent them. See generally American Bar Association Standards for Criminal Justice Prosecution Function and Defense Function, Standard 4- 1.3(e) (1993) ("Defense counsel should not carry a workload that, by reason of its excessive size, interferes with the rendering of quality representation, endangers the client's interest in the speedy disposition of charges, or may lead to the breach of professional obligations. . . ."); American Bar Association Model Rules of Professional Conduct Rule 1.7(b) (addressing a lawyer's duty to his

client when his representation may be limited by other considerations, including his representation of another client); see also Northern District of Illinois Local Rule 83.50.1 (Local Rules of Professional Conduct are comparable to the ABA model rules). Part and parcel of these obligations is the duty not to adopt a schedule that hampers the administration of justice. See American Bar Association Standards for Criminal Justice Prosecution Function and Defense Function, Standard 4-1.3(e) (1993); American Bar Association Model Rules of Professional Conduct Rule 1.7(b); see also McGinnis, 796 F.2d at 952 ("[T]he Sixth Amendment does not give an accused the power to manipulate his choice of counsel to delay the orderly progress of his case."). A defendant's qualified right to counsel does not extend to an unwavering insistence on an attorney that has an already busy trial schedule, so as to impede the efficient administration of justice.

More fundamentally, the scheduling difficulty facing counsel is not the "impossible dilemma" he claims it is. A dilemma is "a situation that requires a choice between two evenly balanced alternatives." Webster's II New Riverside University Dictionary, 378 (1988). In other words, a true dilemma requires equally unpleasant options. Counsel does not present the court with a dilemma because his scheduling conflict does not entail two evenly balanced alternatives. The conflict is between a multiple defendant federal felony trial and a private commercial arbitration. This predicament does not require the wisdom of Solomon to resolve. An experienced criminal defense attorney should recognize which of the two obligations carries greater weight.

There is a well established priority of criminal proceedings over civil proceedings. Federal Rule of Criminal Procedure 50(a) makes this explicit by stating:

> The district courts may provide for placing criminal proceedings upon appropriate calendars. Preference shall be given to criminal proceedings as far as practicable.

16

Fed. R. Crim. P. 50(a); see also Bush, 820 F.2d at 861 (discussing the duty of the district court to keep calendars "as current as humanly possible," and noting the difficulties in doing so) (citing Kleba, 796 F.2d at 952 and quoting Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 608 (7th Cir. 1986). Rule 50(b) instructs the district courts to plan for achieving the prompt disposition of criminal cases in accordance with the Speedy Trial Act, Chapter 208 of Title 18 U.S.C. See Fed. R. Crim. P. 50(b). The advisory committee notes to Rule 50 explain that there is a larger public interest in the prompt resolution of criminal cases, "which may transcend the interest of the particular prosecutor, defense counsel, and defendant." See Fed. R. Crim. P. 50 advisory committee notes. This is echoed by Federal Rule of Criminal Procedure 2, which states that the Rules of Criminal Procedure "shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. Fed. R. Crim. P. 2. These authorities make clear that the court has a duty to ensure that criminal cases do not linger on its docket.

By contrast, the arbitration is neither a federal nor a state judicial proceeding. It is a private arbitration being conducted by an alternative dispute resolution entity by the name of Endispute, Inc. (See Mot. to Cont., Ex. 4, Endispute Scheduling Order.) Endispute, Inc. is a commercial, for profit, corporation in the business of providing private arbitration and mediation proceedings as an alternative to litigation. Sorkins Directory of Business & Government, Company Profiles, 1740-41 (Murray L. Sorkin and Pamela J. Sorkin, eds., Chicago ed., vol. 3, 1999). Given the particular circumstances of this case, being a multiple defendant federal criminal prosecution, it is disingenuous to suggest that a corporate commercial dispute set before a compensated non-judicial officer under the auspices of a profit making entity should take precedence over a jury trial before the United States District Court. Cf. Duncan v. Louisiana, 391 U.S. 145, 149 (1968) (discussing the

Court's belief that "trial by jury in criminal cases is fundamental to the American scheme of justice"); Klopfer v. North Carolina, 386 U.S. 213, 223-26 (1967) (discussing the Sixth Amendment right to a speedy trial and the Magna Carta, and noting the fundamental importance of prompt criminal proceedings). Especially so in light of the fact that five persons have been indicted by a federal grand jury following years of investigation by federal agencies. And, indeed, a case in which one of Hanhardt's Co-Defendants, Joseph Basinski, has been in pre-trial detention for months following a bond hearing that included evidence of his efforts to intimidate a potential government witness.[7] And the affidavit in support of the initial Title III application indicates that numerous cooperating informants have expressed fear for their safety should their identity be revealed.

Hanhardt asserts that the court should take into account "the well established federal policy favoring arbitration of disputes." (Mot. to Cont. pg. 10.) In the broad view, the court and the public look with approval upon two corporations that have decided not to make a federal case out of their dispute. The court recognizes the value and importance of efforts to settle commercial disputes without resort to litigation. But, contrary to Hanhardt's argument, such alternative private dispute resolution cannot take precedence over a federal felony criminal trial. Hanhardt does not ask the court to continue a federally filed civil lawsuit at the expense of another civil case in the federal or state court. Nor is there any indication that Hanhardt has sought, or is seeking, a continuance in the arbitration. Rather, Hanhardt seeks the continuance to proceed with an arbitration at the expense of a federal felony trial.

---

[7]For further background of the allegations against Basinski, see United States v. Basinski, 226 F.3d 829, 832-33 (7th Cir. 2000).

18

Moreover, counsel submits nothing more than his own ipse dixit assertion that the arbitration date is set in stone. Counsel's affidavit stating that all factual matters stated in the motion to continue are true is insufficient to support the broad statement that "it is the avowed intention of all to begin [the arbitration] on September 17, 2001...." (Mot. to Cont. pg. 8.) Counsel suggests that all counsel and concerned parties have this avowed intention, but he cannot speak for all those involved in the arbitration. Accepting that Hanhardt's counsel intends to go forward with the arbitration on September 17th, that is insufficient reason to believe that the arbitration will actually go on as scheduled, and it is insufficient reason to continue the trial date here.

And, as the Government points out, Hanhardt's motion is noticeably lacking any indication that counsel has even attempted to continue the arbitration. There is no detail as to the information Mr. McGarr was given prior to making his affidavit. A fully informed arbitrator understands that a federal criminal trial takes precedence over private alternative dispute resolution, and it appears that Mr. McGarr may not have been fully and formally informed of all the circumstances. It rings hollow to come to a United States District Court and demand a continuance before seeking a continuance in a private arbitration. To come here first because this court's schedule was set after the arbitration schedule was set is rigidly following the calendar instead of looking at the relative weights of the two proceedings.

The court also notes its impression that the arbitration schedule is somewhat optimistic. The arbitration schedule allows for discovery, which has apparently been ongoing since 1985, to continue until August 31, 2001. It may be sanguine to schedule a final resolution within three weeks of such extensive discovery. Counsel asserts that placing this case on a schedule after the arbitration will result in a delay of approximately four months, but the court is not at all convinced of that fact.

Counsel's argument suggests that all counsel in the arbitration will rigidly comply with the dates set by the arbitrator, and that no one will seek an enlargement of time. Counsel also suggests that because of Mr. McGarr's state of mind at the time of his affidavit, May 16, 2001, he will deny a request in July, August, or even September to continue the arbitration on grounds of which he has not been fully and formally informed.[8] Parties to private arbitration are there by their own agreement, and have greater flexibility in controlling their proceedings. Thus, the potential exists that the arbitration will not be completed by the first of the year, which the court must consider. If the arbitration takes longer than expected, the court faces the potential of additional scheduling conflicts from Hanhardt's Co-Defendants, or conflicts with the court's scheduling of other criminal cases.

And, the court cannot ignore the fact that Basinski, Hanhardt's Co-Defendant, is being detained. Basinski has submitted an affidavit that he does not object to the continuance, but the court must not allow excessive pre-trial detention. On the uncertain facts present here, granting an open ended continuance to Hanhardt for his counsel to complete the private arbitration creates a significant risk that Basinski will remain in pre-trial detention for an extended period. That prospect is unacceptable to the court.

In short, the court does not accept Hanhardt's argument that there is parity between a jury trial in the United States District Court and an arbitration before a non-judicial officer arranged by agreement between private corporations that have employed counsel. Nor can the court accept the argument that counsel for Hanhardt finds himself on the horns of a court-created dilemma. There

---

[8]The court takes judicial notice of the Chicago Daily Law Bulletin article in Late May of 2001 that Mr. McGarr has announced his gradual retirement.

is no true dilemma here. There are numerous alternatives and choices available to Hanhardt's counsel. The court does not accept, furthermore, that an attorney breaches a professional obligation to a civil client when he acts in compliance of an order to appear for trial of a criminal felony in the United States District Court. Hanhardt's attorney faces a difficulty, not a dilemma, and it is specious to suggest that his only choice is one of sharpened horns.

Hanhardt also asserts that the court is needlessly rushing the case to trial, but that is hardly the case. Hanhardt was indicted and arraigned in this case in October 2000.[9] Having the case go to trial approximately eleven months later is not rushing the case to trial. The court has already struck one trial date, and has granted each of Defendants' four motions for more time to file pre-trial motions. Contrary to Hanhardt's suggestion, the court is not rushing this case along. It is proceeding at an orderly, efficient pace. The court also notes that Hanhardt and his Co-Defendants have taken full advantage of the Rules of Criminal Procedure by filing numerous motions in this court and petitions for mandamus in the Seventh Circuit. It is well within Defendants' rights to have respectfully disputed the rulings of this court, a ruling by Chief Judge Aspen, and that of a three judge panel of the Seventh Circuit. Defendants are making full use of the judiciary, creating systemic reasons for the case to progress instead of linger.

Implicit in Hanhardt's argument is that the court has an obligation to explain why it set September 4, 2001 as the trial date. That is not the law. Again, the burden is on the moving party to persuade the court to change a set date, rather than on the court to explain its reasons for selecting a date. See Morris, 461 U.S. at 11; Reynolds, 189 F.3d at 527; Bush, 820 F.2d at 860. If, in the

---

[9]It is immaterial that a superseding indictment was brought in November of 2000 to correct two minor typographical errors. Hanhardt was made aware of the substance of the charges in October of 2000.

21

court's articulated and reasoned discretion, the movant's stated reason for seeking a continuance is insufficient, that ends the matter. Hughey, 147 F.3d at 431; Depoister, 116 F.3d at 294; Koen, 982 F.2d at 1115. The court should not be placed in the position of defending a decision as basic as setting its schedule. The independence and integrity of the judiciary demand no less. Nevertheless, the court notes that it has a busy schedule, including several criminal cases that are either scheduled for trial in the late summer, or which the court anticipates going to trial early next year. Some of these cases are multiple defendant cases, and one potentially involves the death penalty. As discussed above, the court should not be placed in the position of defending scheduling decisions. Suffice it to say that it is far more convenient to the court to have this matter go to trial as scheduled, rather than pushing the case into next year.

In saying this, the court makes it clear that the convenience of the court is controlling, rather than the convenience of the judge. It is improper and incorrect to equate the convenience of the court with the vagaries of a judge. Federal judges do the work of the court pursuant to the authority given to them by Article III of the Constitution and by Congress. The convenience of the court, including the efficient administration of justice, is of utmost concern.

Most importantly, though, denial of Hanhardt's motion does not impermissibly infringe on his Sixth Amendment rights. As previously discussed, the court must ensure that the adversarial process is secure, and that Hanhardt's right to prepared, available counsel is protected. See Wheat, 486 U.S. at 159; Hughey, 147 F.3d at 431. In this case, the adversarial process and Hanhardt's right to prepared and available counsel are protected. Indeed, Hanhardt has already exercised his right to counsel not once, but twice, by selecting Thomas Decker, and then replacing him with current counsel. Hanhardt's counsel is the former United States Attorney, a partner at a large law firm, and

22

has ample resources, including the assistance of at least two associates. At a recent status hearing, Hanhardt's counsel asserted that he would not be here on September 4, 2001. That statement presumes the filing and granting of a motion to withdraw. Unless and until such a motion is granted, counsel has an obligation to appear for trial. See In re Morano, – F.3d –, No. 01-1298, 2001 WL 800042 (7th Cir. July 17, 2001) (affirming an order of contempt against an attorney that failed to appear for a criminal trial after the court denied his motion to withdraw). The granting of a motion to withdraw by any counsel is not a forgone conclusion.

In sum, the salient circumstances here are that the trial will occur approximately eleven months after indictment. This time period is appropriate for this case, and provides adequate time for Hanhardt's lawyers to prepare for trial. Earlier in the proceedings, the court noted that it should not force the case to trial, and struck the original trial date of January 22, 2001 trial date. (R. 88-3, Tr. of Nov. 16, 2001, pp. 22-23.) The Government objects to Hanhardt's motion, and the court must consider the public need in efficient resolution of criminal cases. Defendant Basinski, who is being detained, should not linger in pre-trial detention. Finally, the court has other matters to deal with, which may become disrupted if this case is continued into 2002. The scheduling conflict of Hanhardt's counsel is insufficient to overcome these circumstances.

## 2. Fifth Circuit Factors:

Looking at the Fifth Circuit's factors cited by Hanhardt, the court also finds that continuance is inappropriate. The Fifth Circuit's factors include: (1) when the request for continuance was filed; (2) the nature of the reasons offered to support the continuance, and if there is reason to believe that those reasons are either not candid or offered in bad faith; (3) the length of the requested delay; (4)

the number of continuances previously granted; and (5) the general balance of convenience to the parties and the court. Hughey, 147 F.3d at 431-32 (citing cases).

Here, the first factor does not weigh in favor of a continuance. Granted, Hanhardt's request is not on the eve of trial. Nevertheless, the trial date is eleven months after indictment, by which time Hanhardt's lawyers will have had ample time to prepare for trial. (See infra pp. 25-31.)

The second factor, the stated reason for seeking a continuance, also demonstrates that a continuance is not warranted. As discussed extensively above, counsel's scheduling conflict is not sufficient to change the trial date. (See supra pp. 8-23.) The court is not of the opinion that counsel has not been candid, or is acting in bad faith. Nevertheless, counsel does not offer much in the way of supporting his assertion that the arbitration date is unmoveable, and it appears that he has not yet even attempted to change the arbitration date. Even if counsel had offered more to support his contentions, it remains that this multiple defendant federal criminal trial takes precedence over a non-judicial private arbitration. (See id.) And, as discussed in greater detail below, the court is not persuaded that counsel needs additional time to prepare the case for trial. (See infra pp. 25-31.)

The third factor, the length of the requested delay, also weighs in favor of denying the motion. The requested delay is approximately four months, but the court is concerned that the delay will exceed that. And, assuming that it is four months, granting the continuance impedes the efficient administration of the court. The strong public interest in resolving criminal cases weighs against granting a continuance where trial would be postponed until approximately fifteen months after indictment, especially where the Government objects to the continuance, and a Co-Defendant is being detained. See Fed. R.'s Crim. P. 2, 50; Fed. R. Crim. P. 50 advisory committee note; cf. Klopfer, 386 U.S. at 223-26; Bush, 820 F.2d at 861. But, even if the Government were to agree to

a continuance, the court must look to the public interest, which may transcend the position of the parties. See Fed. R. Crim. P. 50 advisory committee note

The fourth factor concerns the number of continuances previously granted, and also weighs in favor of denying the motion. Hanhardt incorrectly argues that the trial date has not been continued in this case. (See Mot. to Cont. pg. 5.) The court has already stricken the original trial date of January 22, 2001, and has also granted four motions to extend the time in which Defendants had to file pre-trial motions. Hanhardt will not be heard to argue that this is the first instance in which he has sought additional time.

Finally, balancing the conveniences of the parties and the court demonstrates that a continuance is inappropriate. The court's convenience is served by having this case go to trial as scheduled. See Bush, 820 F.2d at 861 (the court is to keep its calendar "as current as humanly possible."); (see also supra pg. 22) (discussing the convenience of the court).

**B. Time to Prepare for Trial:**

Hanhardt's second reason for seeking a continuance is the asserted need of his lawyers for additional time to prepare for trial. The Seventh Circuit has announced as many as nine factors to examine in deciding a motion to continue based on alleged inadequate time to prepare for trial, but the most recent case to look at the issue lists only seven factors. Compare Avery, 208 F.3d at 602 (reciting seven factors) with Bush, 820 F.2d at 860 (reciting nine factors, five of which are identical to those in Avery). Hanhardt does not present his motion in light of the Seventh Circuit's factors. Instead, he cites Hughey, and lists the factors that the Fifth Circuit uses to analyze the question of whether the denial of continuance infringes on the limited Sixth Amendment right to counsel of choice. See Hughey, 147 F.3d at 431-32. Issues raised in a motion to continue based on scheduling

25

conflicts and Sixth Amendment rights involve different issues than those raised in a motion to continue based on inadequate time prepare for trial. See Uptain, 531 F.2d at 1286 & 1289-90. The Government, in opposing Hanhardt's motion, analyzes the case under the factors announced in Avery. While recognizing that this inquiry depends on the individual facts of each case, and does not lend itself to a ritualistic determination, see Depoister, 116 F.3d at 294 (reciting factors to consider, and noting that they will deserve varying weight depending on the facts at hand), the court will apply the factors announced in Avery. That case is the latest word from the Seventh Circuit on the issue, and fits well with the facts of this case. The court will incorporate Hanhardt's arguments into the Avery factors.

The Avery decision lists the following relevant factors to consider in deciding a motion to continue because of alleged inadequate time to prepare: (1) the quantum of time available for preparation; (2) the likelihood of prejudice from denial; (3) the accused's role in shortening the effective preparation time; (4) the degree of complexity of the case; (5) the availability of discovery from the prosecution; (6) the likelihood that the continuance would satisfy the movant's needs; and (7) the inconvenience to the court. Avery, 208 F.3d at 602.[10]

The first factor is the amount of time available for preparation. See Avery, 208 F.3d at 602. The scheduled trial date is eleven months after indictment and nine months after current counsel

---

[10]By contrast, Bush recites the following factors: (1) the quantum of time available for preparation; (2) the likelihood of prejudice from denial; (3) the accused's role in shortening the effective preparation time; (4) the degree of complexity of the case; (5) the availability of discovery from the prosecution; (6) the adequacy of the defense actually provided at trial; (7) the skill and experience of the attorney; (8) any pre-appointment or pre-retention experience of the attorney with the accused or the alleged crime; and (9) any representation of the defendant by other attorneys that accrues to the defendant's benefit. Bush, 820 F.2d at 860.

appeared. By September 4, 2001, there will have been ample time for Hanhardt's lawyers to prepare this case for trial. Hanhardt asserts that the extensive discovery disclosed from the Government requires more time to analyze, but that argument is without merit. The Government turned over the bulk of the materials in November and December of 2000, which is nine to ten months prior to the trial date. Notwithstanding that the discovery consists of over 25,000 pages of material, there is sufficient time to review the material prior to trial. Indeed, on four occasions, defense counsel have raised the extensiveness of discovery as a reason for continuing the date for pre-trial motions to be due. The court granted each of the Defendants' four motions. At the hearing on May 7, 2001, over eleven weeks ago, the court cautioned that the asserted need for additional time to review the Government's discovery materials would not be cause for further extensions of time. (See Tr. of May 7, 2001, pg. 12.)

Most of the discovery goes to Title III intercept authorizations, orders, and transcripts. Hanhardt's lawyers have reviewed all of these materials in preparing a motion to suppress evidence obtained from the intercepts. That motion was filed on June 29, 2001, and remains under advisement. It is readily apparent that counsel is already familiar with the Title III materials, and that trial preparation of that material will not be overly burdensome.

The second factor is the likelihood of prejudice from denial of a motion to continue. See Avery, 208 F.3d at 602. This issue mirrors the Sixth Amendment issue discussed above, for that is the prejudice of which Hanhardt complains. (See supra pp. 8-23.) The court reiterates that Hanhardt has exercised his right to counsel of choice not once, but twice in this case by hiring Thomas Decker

27

and then his current lawyers.[11] On the facts here, Hanhardt's right to counsel of choice does not require the court to change its schedule over the objection of the Government, and to the detriment of judicial efficiency, so as to accommodate counsel's schedule. (See supra pp. 8-23.)

The third factor examines the accused's role in shortening the effective preparation time. See Avery, 208 F.3d at 602. Hanhardt points to the amount of effort his counsel has already expended on this case, which includes: (1) review of the indictment and conferences with Hanhardt; (2) review of 12,000 pages of applications for, and extensions of, wire intercepts and pen register i.d. devices; (3) review of 5,200 pages of wire intercept transcripts; (4) review of 8,400 pages of F.B.I. 302 material; (5) preparation of pre-trial motions; (6) conferences with counsel for Co-Defendants; (7) conferences with prosecutors; (8) preparation of the motion to suppress evidence obtained from the Title III intercepts; (9) preparation of a motion for discovery connected with the Title III intercepts; (10) preparation of the motion to recuse; (11) preparation of a petition for mandamus ordering recusal, supplemental petition for mandamus, and petition for rehearing en banc on denial of mandamus. Although the Government states that this factor is inapposite, the court notes that a portion of the work of Hanhardt's lawyers has been on ancillary matters, such as the motion to recuse, and the three filings in the Seventh Circuit. The court is not persuaded that these efforts have impeded his lawyers' preparation for trial.

The fourth factor is the degree of complexity of the case. See Avery, 208 F.3d at 602. Hanhardt asserts that this case presents complex legal and factual issues, but he fails to specify what

---

[11]The court notes that the associates assisting Mr. Sullivan with this case have not filed appearances. One associate, Mr. Silver, addressed the court without having filed an appearance, and despite his statement that he would file an appearance, the clerk's computer docket does not show that he has done so.

issues are of such complexity that he needs an additional four months to prepare for trial. Hanhardt does allege that the Government's investigation into this case took over six years to complete, and that the Government has produced over 26,000 pages of discovery materials. Even though Hanhardt does not specifically do so, the court construes these facts as support for the argument that this case presents complex legal and factual issues. The Government argues, and the court agrees, that this case is not overly complex. The basic allegations are thefts of jewelry. The Government argues that its evidence will entail testimony from victims to establish that the crimes occurred, and that the victims were targeted by Defendants. The Government also states that it intends to introduce telephone recordings and F.B.I. surveillance video tapes, telephone records, and testimony from persons that allegedly received stolen jewelry. The recorded conversations, as far as the court is aware, are in English and do not require the use of an interpreter. Compare United States v. Briscoe, 896 F.2d 1476, 1484 (7th Cir. 1990) (drug conspiracy case where the evidence included recordings of conversations spoken in Yoruba, a language spoken in Nigeria). Nor is there any indication that the recorded conversations involve any type of coded language that would need interpretation. Compare United States v. McAnderson, 914 F.2d 934, 938-39 (7th Cir. 1990) (terrorist conspiracy case that involved deciphering coded statements in recorded conversations). That these crimes involve multiple Defendants, and allegedly occurred as part of an organized crime conspiracy does raise the complexity some, but not to the point that court should extend the trial date out another four months. Hanhardt's counsel, being the former United States Attorney and long time practitioner, has a great deal of experience in federal criminal matters. The factual and legal issues of this case should not be overly complex to him or his associates.

The fifth factor is the availability of discovery from the prosecution. See Avery, 208 F.3d at 602. Hanhardt argues that despite the fact that the Government has produced over 26,000 pages of material, most of it (21,000 pages) in November and December of 2000, his lawyers need additional time to digest the discovery. He claims that the bulk of the material produced to date has been utilized to prepare his motion to suppress directed to the Title III materials, and that other material has "been dribbling in piecemeal." (Reply, pg. 2.) Hanhardt further asserts that these materials do not contain adequate information to allow counsel to place the information in context "without time consuming, independent investigation." (Id.) Hanhardt fails to disclose any details about these purported independent investigations, such as how much time they have taken, or what counsel has needed to investigate to place the discovery materials in context. In any event, the argument is unavailing. The Government has not been dilatory in producing discovery, and has even stated its intention to turn over 18 U.S.C. § 3500 material by August 1, 2001, over a month before trial. See 18 U.S.C. § 3500 (production of statements and reports of witnesses under § 3500 not required until after the witness has testified on direct examination). These facts weigh against granting a continuance.

The sixth factor is the likelihood that the continuance would satisfy the movant's needs. See Avery, 208 F.3d at 602. Part of this analysis is that the movant put forth a compelling need to change the trial date. Morris, 461 U.S. at 11; Reynolds, 189 F.3d at 527; Bush, 820 F.2d at 860. Hanhardt fails to do so. The impossible dilemma of which counsel complains is not there, and with trial taking place nearly eleven months after indictment, there is no need to continue the trial date to allow additional time to prepare.

The final factor is the inconvenience to the court if the continuance is granted. <u>Avery</u>, 208 F.3d at 602. As discussed earlier, the focus is on the convenience of the court, not the judge. (<u>See</u> supra pg. 22.) This case has been using the resources of both this court and the Seventh Circuit. The efficient administration of justice is better served by having the case go to trial as scheduled, rather than incurring additional delays. The court has other criminal cases on its docket, and re-scheduling this case to the early part of next year may adversely affect the rights of those defendants, and impede the efficient, prompt resolution of their cases. The investigation in this case began years ago. There are allegedly numerous victims and dozens of witnesses whose recollections may fade as time goes by. Hanhardt argues that the Government fails to present any reason to have this trial go forward as scheduled. The Government, however, has no obligation to provide a reason for the case to go as scheduled. There is abundant authority noting the public interest in moving criminal cases to trial. <u>See</u> e.g. Fed. R.'s Crim. P. 2, 50; Fed. R. Crim. P. 50 advisory committee note; <u>Bush</u>, 820 F.2d at 861; <u>cf.</u> <u>Klopfer</u>, 386 U.S. at 223-26. In this case, with the Government objecting to the continuance, the case being approximately eleven months old at the scheduled start of trial, and one Co-Defendant in pre-trial detention, the public interest is served by having the trial proceed on schedule.

### III.   CONCLUSION

For the foregoing reasons, Hanhardt's motion to continue the trial date is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, SR.

DATED: 7-26-01

31