# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 853 - 1 | **DATE** | 11/13/2001 |
| **CASE TITLE** | UNITED STATES vs. WILLIAM A. HANHARDT | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for release pending sentencing is denied.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 15 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| EF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 00 CR 0853 |
| WILLIAM A. HANHARDT; JOSEPH | ) | |
| N. BASINSKI; PAUL J. SCHIRO, | ) | HONORABLE CHARLES R. NORGLE |
| SAM DESTEFANO, GUY ALTOBELLO | ) | |
| and WILLIAM R. BROWN, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
NOV 1 5 2001

**OPINION AND ORDER**

CHARLES R. NORGLE, Sr., District Judge:

Before the court is Defendant William Hanhardt's motion for release pending sentencing pursuant to 18 U.S.C. § 3143. For the following reasons, the motion is denied.

**I. BACKGROUND**

On October 19, 2000, Hanhardt and his co-defendants were indicted in this case, which involved a complex organized crime conspiracy to commit jewelry thefts across the United States. Hanhardt was released on bond pending trial, subject to certain conditions.

After numerous delays, Hanhardt's trial was scheduled for October 16, 2001. In the weeks prior to the scheduled trial date, all of Hanhardt's co-defendants pleaded guilty, save William Brown who remains a fugitive. Just prior to October 16th, the parties informally told the court that Hanhardt would be pleading guilty rather than going to trial. Relying on that representation, the court did not order a jury. On October 16th, however, Hanhardt did not appear. Hanhardt's counsel informed the court that Hanhardt was hospitalized that morning as the result of his intentional



overdose of prescription medications with an intent to harm himself. Hanhardt's counsel characterized the incident as an attempt by Hanhardt to cause himself harm, while the Government characterized it as a suicide attempt. The court found that Hanhardt had violated conditions of the release order, and revoked the release order. The court also issued a warrant for Hanhardt's arrest, but stayed execution of the warrant until October 19, 2001, at which time the court ordered Hanhardt to appear. The court's reason for delaying execution of the warrant was to allow Hanhardt to come in voluntarily.

On October 18, 2001, the Government presented an emergency motion to execute the warrant immediately. The Government learned that Hanhardt was going to be entering an in-patient mental health treatment program at a local hospital, and thus was unlikely to appear on October 19th as ordered. The court granted the motion, and Hanhardt was taken into custody. Hanhardt was initially incarcerated for a short time at a local hospital, and an agreed order was entered regarding visitation. Still in custody, he was later transferred to the Metropolitan Correction Center ("MCC"). Since then, Hanhardt has been incarcerated at the MCC, subject to the usual rules of the institution.

On October 25, 2001, Hanhardt pleaded guilty to both counts of the superseding indictment. Hanhardt's counsel read into the record a summary of the facts upon which Hanhardt was pleading guilty. All parties agreed that Hanhardt's summary was a sufficient factual basis for his plea. The Government then read a lengthy statement of what its evidence would show if the case were to go trial. Hanhardt did not totally concede to the Government's version of the facts, but under oath stated that he was pleading guilty because he was in fact guilty of the charges alleged in the superseding indictment.

Hanhardt is now seeking re-release pending sentencing, currently scheduled for January 31, 2002. Hanhardt has filed a written motion, and the court has heard oral argument from both Hanhardt's counsel and the Government. Hanhardt argues that his motion has two components: (1) that the circumstances surrounding his alleged suicide attempt have changed; and (2) that he meets the conditions for pre-sentence release specified in 18 U.S.C. § 3143. The Government counters that Hanhardt does not meet his burden under § 3143, and that release should therefore be denied.

## II. DISCUSSION

Release pending sentence is governed by 18 U.S.C. § 3143(a), which states in relevant part:

> (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

18 U.S.C. § 3143(a)(1); see also United States v. Krilich, 178 F.3d 859, 860-62 (7th Cir. 1999) (analyzing §§ 3143(a) & (b) (citing United States v. Holzer, 848 F.2d 822 (7th Cir. 1988)). The legislative history explains that "[t]he reason for not imprisoning a convicted defendant (unless he is likely to flee or is a public menace) before he is sentenced is that the sentence may not be a sentence of imprisonment, or may be sentence for a shorter period of imprisonment than the interval between conviction and sentencing; or that the defendant needs some time to get his affairs in order. . . ." Holzer, 848 F.2d at 824. Per the statutory language, there is a presumption in favor of detention pending sentencing. 18 U.S.C. § 3143(a)(1); United States v. Manso-Portes, 838 F.2d 889, 889-90 (7th Cir. 1988); United States v. Thompson, 787 F.2d 1084, 1085 (7th Cir. 1986); United

States v. Marks, 947 F. Supp. 858, 863 (E.D. Pa.1996). To overcome this presumption, Hanhardt must present clear and convincing evidence that he is not likely to flee and that he is not a public menace. 18 U.S.C. § 3143(a)(1); Holzer, 848 F.2d at 824; see also Monso-Portes 838 F.2d at 889-90 (ruling that either a risk of flight or a public danger requires denial of pre-sentence release). Release is allowed only upon a showing of such evidence, and any release must be in accordance with 18 U.S.C. §§ 3142(b) or (c). 18 U.S.C. § 3143(a)(1). With these principles as a guide, the court examines Hanhardt's motion.

A.  **Changed Circumstances:**

The bulk of Hanhardt's motion is devoted to discussing the circumstances he claims led to his alleged suicide attempt on October 16th, and explaining how those circumstances have changed. The written motion alleges that the weeks leading up to October 16, 2001 were extraordinarily stressful because of medical problems. The written motion also alleges that prior to October 16th, Hanhardt was taking prescription medications that rendered him susceptible to thoughts of suicide. The only evidence in support of this conclusion are a few photocopied pages from a physician's pharmaceutical desk reference book. At oral argument, Hanhardt's counsel asserted that these pending criminal proceedings also contributed to Hanhardt's stress level.

Hanhardt argues that these circumstances have now changed. He claims that he no longer takes the same prescription medications, and that the stress of the legal problems has lessened because of his guilty plea. Hanhardt says he is no longer a suicide risk, and has been removed from any suicide watch at the MCC.

All of this is well and good, but does not persuade the court to grant re-release pending sentencing. The alleged change in medication does little to assure the court that Hanhardt will

appear for sentencing. As for the purported reduction in stress from pleading guilty, Hanhardt still faces the inevitable sentencing, which the parties agree will involve a substantial term of imprisonment. Hanhardt cannot erase the events of October 16th with mere allegations of post-arrest changed circumstances and a new promise to appear. The fact remains that Hanhardt chose a course of action to purposefully avoid his October 16th trial date. The claimed changes in circumstance cannot re-write history. The court would abuse its discretion if it accepted those changed circumstances as a legitimate reason for a re-release pending sentencing.

**B. Statutory Requirements:**

As noted above, there is a statutory presumption in favor of detention. Hanhardt must overcome that presumption with clear and convincing evidence from which the court can make a prediction about his future conduct, namely that he will not flee and that he does not pose a danger to the community. 18 U.S.C. § 3143(a)(1); Krilich, 178 F.3d at 860-62; Holzer, 848 F.2d at 824; Monso-Portes 838 F.2d at 889-90. As discussed below, he fails to carry that burden.

**1. Flight Risk:**

Hanhardt's evidence concerning flight risk is limited to his strong connections to a large and supportive family, and his assertion at oral argument where Hanhardt personally told the court that he would appear on January 31, 2002. Although it is arguable that strong family ties make one less likely to flee, Hanhardt's conduct to date has not supported that argument. Hanhardt had the same family ties prior to October 16th, when he purportedly attempted suicide and failed to appear for his trial. It is unconvincing to approach the court now and argue these same family connections will ensure his appearance on January 31st. Hanhardt has an understandable desire to spend time with his family, particularly over the upcoming Thanksgiving and Christmas holidays, but that alone is

5

not a basis to order his release. See e.g. United States v. Bryant, 873 F. Supp. 660, 663 (N.D. Ga. 1994) (collecting authority). Were that the case, jailors would patrol empty corridors at penal institutions.

Hanhardt's personal vow to appear is also insufficient. Hanhardt agreed to appear for trial as a condition of his pre-trial release, and he did not do so. The court emphasized this fact at oral argument, where it had Hanhardt read aloud the portion of the pre-trial release order that advised him of potential sanctions for violating the order. Hanhardt admitted that he read and signed that order. The court also notes that Hanhardt apparently had no intention of appearing in court on October 19th, as he was planning to be hospitalized as part of an in-patient mental health treatment program. This anticipated non-appearance caused the court to order the immediate execution of the arrest warrant to ensure Hanhardt's appearance. In light of this track record, it rings hollow to come before the court again and make another promise to appear.

Glaringly absent from Hanhardt's motion is any acknowledgment that his conduct on October 16th violated the pre-trial release order. Indeed, the motion goes so far as to assert that Hanhardt has complied with each of the conditions of his pre-trial release order. That assertion is patently incorrect. Hanhardt's actions on October 16th violated the pre-trial release order in at least two respects. Obviously, Hanhardt violated the condition that he appear for trial on October 16th. That he had an intention to plead guilty on that day rather than go to trial did not change his obligation to appear. His alleged suicide attempt was of his own doing, notwithstanding the stressful circumstances he was facing. Moreover, Hanhardt's alleged overdose of prescription medicine violated the condition that he not possess or use controlled substances unless prescribed by a physician. Hanhardt did have prescriptions for the medication on which he allegedly attempted to

overdose, but the prescriptions did not permit him to ingest potentially fatal quantities or otherwise authorize abusive use. These violations rendered Hanhardt liable for several sanctions, including revocation of release, bond forfeiture, and prosecution on new and independent charges. Of those sanctions, the Government has only pursued a revocation of release, even though it would have been within the terms of the release order to seek additional sanctions, including prosecution. See 18 U.S.C. 3146. It simply strains credibility for Hanhardt to assert that he did not violate his pre-trial release order, and that he will comply with any new release order. See e.g. Marks 947 F. Supp. at 863-66.

It is not unusual for persons seeking pre-sentence release to point to their compliance with pre-trial release orders as evidence that they will appear for sentencing. See e.g. United States v. Manso-Portes, 838 F.2d 889, 889 (7th Cir. 1987); United States v. Solis-Jordan, No. 97 CR 814, 1999 WL 261703 at *1 (N.D. Ill. April 14, 1999). The argument is routinely rejected because prior to trial there is the possibility of no imprisonment, which evaporates upon a finding of guilt. See Manso-Portes, 838 F.2d at 889. Hanhardt cannot even make the argument, for he failed to comply with the pre-trial release order. See e.g. United States v. Infelise, No. 90 CR 87, 1991 WL 268654 at *1 (N.D. Ill. Nov. 27, 1991); United States v. Nicholas, No 90 CR 87-16, 1991 WL 251649 at *2 (N.D. Ill. Nov. 13, 1991); see also Marks, 947 F. Supp. at 863-66 (finding that a previous reversal of a magistrate judge's pre-trial release order, and incredible assertions in a post-guilty plea motion for pre-sentencing release mandated a denial of pre-sentence release).

Moreover, pre-sentence release under § 3143(a) is subject to tight time limitations. See United States v. Lane, 252 F.3d 905, 908 (7th Cir. 2001). An indefinite pre-sentence release, or even one exceeding 60 days, is an abuse of discretion. See Krilich, 178 F.3d at 862; Holzer, 848 F.2d at

7

824-25. These restrictions are in place because there is little chance of a fundamental miscarriage of justice after there has been a finding of guilt, particularly where the defendant has pleaded guilty and made an unconditional statement that he is in fact guilty. See Lane, 252 F.3d at 908. The sentencing in this case is scheduled for January 31, 2002, approximately twelve weeks from this writing. The court would presumptively abuse its discretion to grant pre-sentence release until then. See Krilich, 178 F.3d at 862; Holzer, 848 F.2d at 824-25. And, there are no guarantees that the sentencing will actually occur on that date, for sentencing dates are commonly continued for a variety of reasons. The parties have indicated that this sentencing hearing may be somewhat involved and may extend beyond a single day. Throughout this case Hanhardt has made repeated efforts to continue matters, and with past behavior being a barometer of future behavior, additional efforts seem likely. In short, it is easily foreseeable that the sentencing date will be continued beyond January 31, 2002. Section 3143 would not even allow pre-sentence release until January 31, much less some period of time beyond.

Hanhardt also claims that he needs additional time to "transition" his family's affairs to his wife's responsibility. See Holzer, 848 F.2d at 824 (noting the legislative history that family transition may be reason for pre-sentence release). But, on the facts of this case, this factor does not carry the day. Hanhardt has faced the indictment for over a year, but was not incarcerated until October 18, 2001. Several times Hanhardt moved to continue the trial date to allow additional preparation for trial, to accommodate his counsel's schedule, and to address his own medical issues. Instead of appearing for trial, he allegedly attempted suicide, and shortly thereafter pleaded guilty. There has been plenty of time for Hanhardt to get affairs in order. Indeed, it appears from the record that Hanhardt's affairs are likely less complicated than some. He is retired, has agreed to an order

8

of forfeiture in excess of four million dollars, and has an agreement with the Government concerning his residence. With the source of his financial familial beneficence in question, his plea for re-release to put his financial and family affairs in order must be considered with caution. Hanhardt's motion presents nothing to warrant additional time to put family affairs in order.

### 2. Danger to the Community:

When considering a release order, the standards for determining whether someone is a danger to the community are broad, and encompass many types of misconduct. See e.g. 18 U.S.C. 3142(g). The court is well within its discretion to consider the nature of the charges of which the defendant is guilty, conduct relevant to those charges, and the defendant's criminal history. See United States v. Oliver, 683 F.2d 224, 235-36 (7th Cir. 1982) (discussing the denial of an appeal bond); United States v. Fernandez, 144 F. Supp. 2d 115, 122 (N.D.N.Y. 2001) (rejecting a pre-sentence release motion, in part, because of past criminality involving drugs and weapons). Hanhardt presents absolutely no evidence to persuade the court that he is not a danger to the community. Instead, Hanhardt's motion and oral argument incorrectly place the burden on the Government, as he asserts that there is nothing in the record from which to infer the he does pose a danger.

To the contrary, dangerousness is present throughout this case. The crimes to which Hanhardt pleaded guilty involved an organized crime conspiracy to commit thefts of jewelry from salespersons across the United States. At the change of plea hearings for Hanhardt and his co-defendants, the Government repeatedly proffered evidence concerning the methods used by Hanhardt and his co-conspirators in carrying out these thefts, which included sophisticated surveillance and stalking of potential victims, and the use of disguises, loaded weapons, and bulletproof vests. These

crimes posed a danger to the public, which the court cannot ignore in assessing Hanhardt's potential danger to the public if it were to grant his release.

The organized crime aspects of the case cannot be overstated. It is well known that organized crime in Chicago has a long and violent history. See e.g. United States v. Rainone, 32 F.3d 1203, 1205 (7th Cir. 1994). The court would be remiss to ignore that history in considering Hanhardt's motion. The Government's evidence from its pre-indictment investigation demonstrates that Hanhardt has a long time connection to Chicago organized crime. Significantly, there is evidence that Hanhardt abused his influence with the Chicago police department to further his own organized crime activity. Some, but not all, of this evidence is found in an affidavit that was submitted in support of a Title III intercept authorization, which stated: (1) general background about organized crime in Chicago, and organized crime strategies involving jewelry thefts (see McNamara Affidavit of Jan. 2, 1996, pp. 6-7); (2) information from named and confidential informants who provided both historical and current information about organized crime in Chicago, and the relationship between Hanhardt and Co-Defendant Joseph Basinski[1] (see id. at pp. 7-37); (3) analysis of activity on a telephone card that was identified by an informant as being used by Hanhardt and Basinski to communicate concerning alleged thefts, which revealed that the card was used to call Hanhardt's home number, Basinski's home number in Arizona, and the phones of persons associated with organized crime in Chicago (see id. at pp. 37-62); (4) analysis of phone records of Hanhardt's home phone, which showed that Hanhardt's home phone had made multiple calls to Basinski's home in

---

[1] Hanhardt has a long time relationship with Basinski, an organized crime figure whose own violent and anti-social behavior led to both criminal charges against him, see United States v. Basniski, 226 F.3d 829 (7th Cir. 2000), and to the court's revocation of his pre-trial release order in this case.

Arizona and to other persons associated with organized crime in Chicago (see id. at pp. 62-65); (5) analysis of telephone records of Basinski's phone in his home in Arizona, which showed numerous calls between Basinski's Arizona phone and Hanhardt's home, Hanhardt's pager, and calls to persons that have connections to organized crime in Chicago (id. at pp. 65-66); (6) analysis of calls made to Hanhardt's pager, which demonstrated that Hanhardt received calls from Basinski and other persons connected to organized crime in Chicago (see id. at pp. 67-68); (7) pen register analysis of Hanhardt's home phone number, which showed numerous calls between Hanhardt's home phone and Basinski's phone in Arizona, multiple calls between Hanhardt's home phone and phone numbers assigned to persons connected to organized crime in Chicago, and numerous calls between Hanhardt's home phone and various numbers of the Chicago police department (see id. at pp. 68-70); (8) records of calls made from a telephone at a federal correctional institution to Hanhardt's home, in which Hanhardt made reference to several persons connected with organized crime in Chicago (see id. at pp. 71-72); (9) statements that Hanhardt had leaked information of the F.B.I.'s "strawman" investigation into organized crime in Las Vegas to persons targeted in the investigation (see id. at pp. 72-73); and (10) statements that Hanhardt's name surfaced during the F.B.I.'s "Pendorf" investigation in the late 1970's, where Hanhardt allegedly gave his personal phone number to Allen Dorfman, an organized crime figure. (See id. at pp. 73-74). The court has also reviewed the Government's Santiago proffer concerning co-conspirator statements, which provide additional evidence of Hanhardt's connection with organized crime. Based on this evidence, the court concludes that Hanhardt was active in organized crime, which carries with it an element of public danger.

Hanhardt also had a long career as a Chicago police officer, and there is evidence that he abused his influence with that department to further his criminal affairs. There is the danger that Hanhardt would again abuse law enforcement resources should he be released and try again to avoid his obligation to appear. Hanhardt's police training is another factor the court should consider. He is well schooled in the use of weapons, and quite is capable of using lethal force, should the need arise. Hanhardt's alleged suicide attempt appears to be the act of a desperate man. With an inevitable long prison sentence looming, another bout of desperation could indeed endanger the public if Hanhardt were released.

Again, it is Hanhardt's burden to present clear and convincing evidence to demonstrate that he is not a danger to the community. The evidence concerning the crime of which Hanhardt is guilty, his activity in organized crime, and his familiarity with the use of weapons shows that he has a daunting burden to overcome. But Hanahrdt presents nothing to that effect. Instead, Hanhardt ignores the record, and narrowly portrays himself as a devoted family man, who is incapable of violence. The court, however, cannot ignore the record, and cannot escape the conclusion that Hanhardt would pose a danger to the community if he were released.

### III.   CONCLUSION

For the foregoing reasons, Hanhardt's motion for release pending sentencing pursuant to 18 U.S.C. § 3143 is denied.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, SR.

DATED: 11-13-01