Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 853 - 1 | **DATE** | 12/7/2004 |
| **CASE TITLE** | United States vs. Hanhardt | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

United States' Motion for Entry of Order of Garnishment
[380-1]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The United States' Motion for Entry of Order of Garnishment [380-1] is granted. See attached Opinion and Order.

*/s/ Charles R. Norgle*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | DEC 08 2004 | |
| | Notices mailed by judge's staff. | | date docketed | 416 |
| | Notified counsel by telephone. | | | |
| X | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. 00 CR 853-1 |
| WILLIAM A. HANHARDT, ) | Honorable Charles R. Norgle |
| Defendant, ) | |
| and ) | |
| POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO, ) | |
| Garnishee. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is the United States' Motion for Entry of Order of Garnishment. For the following reasons, the Motion is granted.

**I. BACKGROUND**

In October 2001, Defendant William Hanhardt ("Hanhardt"), a former Chief of Detectives of the Chicago Police Department, pled guilty to two counts of racketeering and conspiracy (18 U.S.C. §§ 371 and 1962(d)) involving jewel theft. This court sentenced Hanhardt to a term of 188 months imprisonment (Hanhardt's sentence was reduced on remand to 141 months), followed by three years supervised release. Additionally, the court ordered that Hanhardt pay $5,145,000 in restitution. In ordering restitution, the court set a payment schedule

1

which provided that, as a condition of his supervised release, Hanhardt could pay in equal monthly installments any amount of the restitution that remained after his period of incarceration. See Amended Sentencing Order of May 25, 2004, at 7.

The United States, in May 2003, instituted postjudgment garnishment proceedings against the Garnishee, the Policemen's Annuity and Benefit Fund of the City of Chicago. During the course of these proceedings, the Garnishee informed the United States that it was making net monthly annuity payments of $4,109.04 to Hanhardt. The United States then moved the court, pursuant to the Federal Debt Collection Procedures Act ("FDCPA"), for an entry of garnishment of these annuity payments in order to partially satisfy Hanhardt's restitution obligation. The United States asserts that, pursuant to the FDCPA, it is entitled to garnishment in the amount of twenty-five percent of these annuity payments, or $1,027.26 per month.

## II. DISCUSSION

Hanhardt asserts first that the United States is barred from entering an order of garnishment now, as an order of garnishment would contravene the court ordered payment schedule. Hanhardt directs the court's attention to its May 2, 2002 Sentencing Order, in which the court ordered that Hanhardt pay the restitution "jointly and severally in equal monthly installments over the three year period of supervised release." The government's attempt to obtain an order of garnishment now, prior to the period of Hanhardt's supervised release, is an improper and unlawful attempt to circumvent the court ordered payment schedule, Hanhardt argues. Hanhardt cites no case law or statute to support his argument.

Hanhardt next asserts that a twenty-five percent garnishment of his pension would create a financial hardship for his wife. Hanhardt informs the court that his wife is elderly, and

depends on his pension funds as her sole source of income. Hanhardt therefore argues that, even if the court determines that garnishment is proper, the court should garnish his pension at an amount lower than the twenty-five percent proposed by the government.

The court has jurisdiction over this matter pursuant to 18 U.S.C. § 3613. That statute provides:

> The United States may enforce a judgment imposing a fine [or restitution] in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law . . ., a judgment imposing a fine may be enforced against all property or rights to property of the person fined . . . .

18 U.S.C. §§ 3613(a) and (f). Enforcement of restitution may begin immediately after an entry of judgment arises on a defendant's property. Id. at § 3613(c).

Although Hanhardt argues that immediate enforcement of the restitution order is inappropriate given the court ordered payment schedule, an obligation to pay restitution generally attaches immediately, unless a court otherwise specifies. The Seventh Circuit recently stated, "restitution is payable immediately unless the judge orders deferral . . ." United States v. Delacruz, No. 04-1166, 2004 U.S. App. LEXIS 18900, at *3 (7th Cir. Aug. 31, 2004); see also United States v. Sensmeier, 361 F.3d 982, 991 (7th Cir. 2004) (restitution is generally to be paid immediately). The court did not order deferral in Hanhardt's case. The court ordered that Hanhardt pay restitution as a condition of his supervised release. However, this order should not be construed as permission for Hanhardt to avoid paying restitution until his sentence of incarceration is complete. "A condition of supervised release is a collection mechanism, not permission to pay nothing toward restitution for the first 188 months." Delacruz 2004 U.S. App. LEXIS 18900, at *3. Moreover, the court has statutory authority to order payment in full of a

restitution obligation when the government, as it has done here, notifies the court of the status of a defendant's economic situation that affects his or her ability to pay restitution. See 18 U.S.C. § 3664(k).

In addition, a district court in Virginia recently ordered immediate restitution in circumstances nearly identical to Hanhardt's. In United States v. James, 312 F. Supp. 2d 802 (E.D. Va. 2004), the defendant pled guilty to stealing funds from a federal agency. Id. at 803. Like Hanhardt, the defendant in James was sentenced to a term of imprisonment to be followed by supervised release, and was ordered to pay restitution. Id. at 804. The James court ordered that if the defendant could not pay restitution immediately, he could pay in monthly installments upon his release from prison. Id. The government instituted garnishment proceedings against James' retirement accounts while James was incarcerated. Id.

The James court ultimately upheld the governments right to immediate restitution, and stated "the existence of [a court ordered payment plan] does not mean that the government is precluded from pursuing other avenues of ensuring that defendant's restitution obligation is satisfied. Court-imposed payment schedules are merely one means available to enforce a restitution judgment." Id. at 806-07. In this case, the court similarly provided a payment plan for the defendant's restitution obligation. The government similarly seeks immediate restitution through garnishment of defendant's retirement funds. The court is persuaded by the James court's reasoning, and reiterates the Seventh Circuit's admonition that "restitution is payable immediately." Delacruz, 2004 U.S. App. LEXIS 18900, at *3; see also Sensmeier, 361 F. 3d at 991. The court therefore grants the United States' Motion for Entry of Order of Garnishment.

4

In addition, the court finds that there is no justification in the law for lowering the amount of this garnishment as Hanhardt requests. The court therefore grants the United States' Motion in the amount of twenty-five percent of Hanhardt's monthly annuity payments, which is presently $1,027.26. Hanhardt cites to two cases to support the proposition that the court may lower his garnishment amount. However, neither case is binding on the court (one is a Second Circuit decision, another a New York District Court decision), and both are distinguishable from the instant case, as the garnishments in these cases were not done pursuant to the FDCPA.[1] Moreover, the FDCPA provides some protection to debtors like Hanhardt by shielding seventy-five percent of their disposable income from garnishment. See 28 U.S.C. § 3002(9) ("'nonexempt disposable earnings' means 25 percent of disposable earnings").

In any case, the law does not allow the court to make a determination as to whether the financial circumstances of Hanhardt's wife take priority over his legal obligation to pay restitution. The only question properly before the court is who has the superior legal claim to Hanhardt's annuity funds. As the government has served a lawful garnishment order on the Garnishee in this case, the government has the superior legal claim to Hanhardt's annuity funds. Hanhardt's other financial obligations must therefore take a back seat to the government's lawful claim. See United States v. Vitek Supply Co., 151 F. 3d 580, 584 (7th Cir. 1998) ("[Defendant] Vitek has many debts and tells us that these are more pressing than the [restitution] judgment in the criminal case, but judicial orders prevail over the defendant's druthers about who should be

---

[1] The Giwah case did not involve a garnishment under the FDCPA. United States v. Giwah, 84 F.3d 109 (2nd Cir. 1996). The George court found that the FDCPA was not applicable to the defendant's situation, and found another garnishment statute more properly applied. United States v. George, 144 F. Supp. 2d 161 (E.D. N.Y. 2001).

paid first. (Vitek does not say that any of its other debts had *legal* priority over the fine and restitution.)").

Hanhardt tells the court that he has a pressing obligation to support his elderly wife. The court does not doubt that this is true, and the court is not unsympathetic to Mrs. Hanhardt's situation. Mrs. Hanhardt, however, is not a party to this case. It is the government who has the clearly superior legal claim to twenty-five percent of Hanhardt's annuity fund. A defendant's criminal conduct oftentimes has unfortunate consequences for his or her family. See United States v. Ambrose, 740 F.2d 505, 517 (7th Cir. 1984) ("I regard it as an unfortunate consequence of these convictions and an unfortunate consequence of the acts that the defendants committed, and I refer to the terrible and devastating effect of this case upon the families of these defendants."); see also Gonzales-Rivas v. INS, 65 F.3d 170 (7th Cir. 1995) (full version available at No. 94-1898, 1995 U.S. App. LEXIS 24167 (7th Cir. August 24, 1995)) ("while . . . respondent's deportation may cause emotional hardship for his brother's family, it is an unfortunate consequence brought upon exclusively by respondent's criminal behavior").

The court acknowledges that one of the unfortunate consequences of Hanhardt's criminal behavior is that his wife will be deprived of needed income. Under the law, however, the government has the superior legal claim to these funds. It is the government's claim that therefore must prevail.

### III. CONCLUSION

For the foregoing reasons, the court grants the United States' Motion for Entry of Order of Garnishment. Garnishee, Policemen's Annuity and Benefit Fund of the City of Chicago, is hereby directed to submit to the Clerk of the Court twenty-five percent, presently $1,027.26 per
6

month, of Hanhardt's net monthly annuity distribution. Garnishee shall continue to submit twenty-five percent of the defendant's net monthly annuity distribution on a monthly basis until the debt to the United States is paid in full, or until Garnishee no longer has custody, possession, or control of any nonexempt property belonging to the defendant, or until further order of this court.

IT IS SO ORDERED

ENTER:

*/s/ Charles R. Norgle*

CHARLES R. NORGLE, Judge

United States District Court

DATED: 12-7-04